\*JOSEPHINE GUTHRIE DUTILL

*vs.*

EDWARD F. DANA

EXECUTOR UNDER THE WILL OF NORMAN P. BROWN

AND

MAINE GENERAL HOSPITAL

Cumberland. Dated December 8, 1952

*Sidney W. Thaxter,* attorney for complainant.

* This case was heard by Mr. Justice Nulty of the Supreme Judicial Court at *Nisi Prius.* The court's findings of fact and rulings of law at nisi are reported because of the novelty and importance of the questions presented. The case is herewith published by the Reporter by special permission of the Chief Justice.

*Edward Dana, Pro Se,* attorney for executor.

*John F. Dana,* attorney for Maine General Hospital.

## FINDINGS OF FACT AND RULINGS OF LAW

The instant case is a bill in equity which seeks to have the Executor of the Estate of Norman P. Brown declared a constructive trustee of property acquired by the late Norman P. Brown as a result of murdering his mother, Mary I. Brown, he being the son and sole heir of said late Mary I. Brown. The bill was originally brought against Edward F. Dana as executor under the will of Norman P. Brown and by separate petition the Maine General Hospital was made party defendant because of the fact that said hospital was named the sole beneficiary under the terms of the will of said Norman P. Brown which will has been duly probated in the Probate Court for the County of Cumberland and State of Maine. Answers have been filed by said Edward F. Dana, Executor, and by the Maine General Hospital and in addition to the answers an agreed statement of facts has been filed to which all parties have assented. The agreed statement of facts has obviated the taking out of any oral testimony and there appears to be no dispute in the facts before this court. By it the parties agree and stipulate that the late Norman P. Brown was sane and in his right mind; that he murdered his mother on March 19, 1951, and that immediately thereafter he attempted suicide and subsequently, three days later, died in the Maine General Hospital from his self inflicted wounds. It also appears from the record that the complainant is the sole present heir at law of the estate of Mary I. Brown who would be entitled to inherit from the estate of said Mary I. Brown in the event that the late Norman P. Brown became disqualified by operation of law from inheriting his mother's

estate as her son and sole surviving heir. The amount in question is $5,369.73 which represents the balance of the estate of Mary I. Brown after the payment of all debts and expenses of administration and it is this sum which the said Edward F. Dana, executor, received from the estate of Mary I. Brown under an order of distribution signed by the Judge of Probate for Cumberland County and which complainant seeks to have the executor, Edward F. Dana, hold as constructive trustee for complainant's benefit.

The legal questions arising in this matter, so far as known, have never been before the Maine courts and it raises the following issues:

1. Whether an heir or next of kin who murders his ancestor while in his right mind is entitled to inherit from the ancestor.

2. If said heir or next of kin is barred from so inheriting, whether a constructive trust may be imposed upon him or the representative of his estate for the benefit of the person who would have been the decedent's heir or next of kin if the murderer had predeceased her.

The question at issue is well stated in *Scott on Trusts*. Vol. 3, § 492, Page 2390, in the following language:

§ 492. **Acquisition of property by murder.** In 1897 Professor James Barr Ames submitted to the legal profession a monograph discussing the question "Can a murderer acquire title by his crime and keep it?" At that time there were very few cases in which this question had been presented to the courts. Professor Ames suggested three possible answers to his question: (1) that the murderer takes the property and keeps it; (2) that the murderer does not take the property; (3) that the murderer takes the property but holds it upon a constructive trust. He suggested that it would run counter to the principles of equity to permit the murderer to enrich himself by his crime. On the

other hand, he suggested that it would violate the Statute of Wills or Statute of Distributions to hold that the legal title did not pass to the murderer. He advocated the third view, that "The legal title passes to the murderer, but equity will treat him as a constructive trustee of the title because of the unconscionable mode of its acquisition, and compel him to convey it to the heirs of the deceased, exclusive of the murderer."

An examination of the authorities and the decided cases discloses that in this country there are three different lines of decisions concerning the right of a person who murders his ancestor and either inherits or would inherit his ancestor's property. A great many decisions, particularly among the older cases, have held that the murderer takes the property and keeps it. Perhaps the leading case is *Wall* v. *Pfanschmidt*, 265 Ill. 180, 106 N. E. 785 (1914). In that case the court decided that since the Legislature had declared the public policy of the state in enacting the statutes of descent, the courts were without power to change it by reading into the statute an exception. The criticism of this particular case and decisions of other states which follow the rule laid down in the Illinois case is aptly summed up in *Page on Wills,* Vol. 1, Sec. 232, which states:

"The Statutes of Descent in the United States are intended to change the rules of the common law as to the persons who would inherit from the ancestor; but there is nothing to indicate that they were intended to change the other rules of the common law, including the rule which excluded an heir who had killed the ancestor wrongfully."

The Statutes of Maine governing the descent of real and personal property do not specifically exclude an heir who murders his ancestor (R. S., 1944, Chap. 156, Secs. 1 and 20). In addition to the statutes the Constitution of Maine contains in Art. I, Sec. 11, a prohibition on attainder which works "corruption of the blood or forfeiture of estate." It

should be noted that to deny the murderer the privilege of taking property which he is technically entitled to inherit because of the murder is not inflicting an additional punishment upon him but is merely preventing him from profiting by his own wrong. He is not suffering a forfeiture of estate under Art. I, Sec. 11, of the Constitution of Maine because he is not being deprived of any other property which he may have acquired rightfully. Sec. 187 of the *Restatement of the Law* under the title "Restitution" reads as follows:

> "(2) Where a person is murdered by his heir or next of kin and dies intestate, the heir or next of kin holds the property thus acquired by him upon a constructive trust for the person or persons who would have been heirs or next of kin if he had predeceased the intestate."

Under said Sec. 187, Comment (a) reads in part as follows:

> "The rules stated in this section are applicable although the Statute of Wills or the Statute of Descent and Distribution makes no provision for the situation where the devisee or legatee or heir or next of kin kills the decedent. The effect of the rules stated in this section is not to make an exception to the statute but is to apply to persons taking under the statute the equitable principal that they should not be permitted to profit by their own wrongful acts.

> "Although the murderer is not permitted to keep the property which he acquires by the murder, he will not be deprived of property which he does not acquire through the murder. It is this distinction which underlies the rules stated in this section and the following sections."

The second line of decisions, that the murderer does not take the property, appears to be founded upon the very ancient maxim of the common law that no one shall be permitted to profit or take advantage of his own wrong, or, put-

ting it another way, to acquire property by his own crime. The reason for the decision appears to be, according to the leading case of *Riggs* v. *Palmer,* 115 N. Y., 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819 (1889), based upon the maxims dictated by public policy which have their foundation in universal law administered in all civilized countries and have nowhere been superseded by statutes. Actually there is but little difference in result between the second line of decisions and the third line of decisions which will be hereinafter referred to other than the matter of procedure. The second rule simply shortcuts the distribution. See *Ellerson* v. *Wescott,* 148 N. Y. 149, 42 N. E. 540 (1896).

The third line of decisions supports the proposition that the murderer and those claiming under him or for him holds the property so acquired as a constructive trustee for those next in succession. By the use of this rule courts do not need to concern themselves with the fact that the statute of descent and distribution provides that the property should go to the heir and next of kin because it is their position that the statute operates in accordance with the laws of descent and distribution and the only question then to be considered is whether the heir or next of kin or those claiming under the heir should be allowed to keep the property. Many states have passed statutes which preclude the murderer or those claiming under him from inheriting, but in the absence of a statute many states and the courts therein have held that the murderer or those claiming under him or his personal representative, as the case may be, hold the property so acquired as a constructive trustee for those next in succession. A discussion of this situation is found in *Scott on Trusts,* Vol. 3, Sec. 492, at Page 2381. There are some excellent cases in New Jersey in which the murderer or those who claim under or through him have not been allowed to profit by the murder. We will refer to those later. In our own state, in *Gilpatrick* v. *Glidden,* 81 Me. 137, 16 A.

464 (1888), our court recognized that a constructive trust may be imposed upon one who obtains title to property unconscionably. The court said at page 150:

> "So for like reason, when one obtains the legal title to real or personal estate, either by will or otherwise, under circumstances which render it unconscientious for him to retain it for his own benefit while in fact another is entitled to it, or to some interest in it, equity secures to the latter his right, not by disregarding the former's legal title but by imposing on him the duty of holding and using his title for the real beneficiary."

See also *Sacre* v. *Sacre et al.*, 143 Me. 80, 55 A. (2nd) 592.

Perhaps one of the leading cases holding that the murderer, or his personal representative, should be held as constructive trustee for the benefit of those next in succession is the case of *Whitney* v. *Lott,* 134 N. J. Eq. 586, 36 A. (2nd) 888 (1944). In that case the court found that a husband murdered his wife and thereafter committed suicide. In determining the rights of the husband in the wife's property, the court invoked the policy of the common law that no one should be allowed to profit by his own wrong, stating, in effect, that that doctrine itself has been universally recognized in the laws of civilized countries for centuries and is as old as equity. The doctrine referred to is found in *Domat,* pt. 2, bk. 1; *Code Nap.* 727; *Mackelday's Roman Law,* 530; *Coke's Littleton* 148-B; *Broom's Legal Maxims,* 9th Ed. 197. The decision also refers to the discussions on the subjects in the various law reviews and text books on equity, including the Restatement of the Law entitled "Restitution," Par. 187, *supra.* It concluded that the wife's property was held by those claiming through the husband as constructive trustees or trustees maleficio.

After considering the three divergent lines of decisions herein referred to, the court comes to the conclusion that

the reasoning in the third line of decisions set forth herein should be the proper rule and best calculated to do justice to all. It therefore holds that legal title passes to the murderer but equity will treat him or those claiming under him or for him as a constructive trustee because of the unconscionable mode of its acquisition and compel him or those to convey it to the heirs or next of kin of the deceased exclusive of the murderer. The reasoning in this case is vindicated by ample and increasing authorities and it is in line with the public policy expressed in the equitable maxims of the common law. It is accordingly determined that the legal title of the property belonging to the late Mary I. Brown passed to her late son, Norman P. Brown, in accordance with the laws of descent and distribution and that said late Norman P. Brown immediately upon acquisition became answerable in equity as a trustee ex maleficio and he who acquired the legal title through him, that is as the executor of his will in this case, Edward F. Dana, has since held it as constructive trustee. Equity has jurisdiction to reach the property although its legal title has passed to the personal representative of the wrong doer.

A decree may be presented to this court for signing and filing in accordance with the findings herein made.

WILLIAM B. NULTY
*Justice, Supreme Judicial Court*

December 8, 1952