SHUMAN, ADMR., APPELLEE, *v.* SCHICK ET AL.,
APPELLANTS.

(No. 181—Decided July 15, 1953.)

*Mr. James J. O'Brien, Mr. John D. Holschuh* and
*Mr. J. Paul McNamara,* for appellants.

*Mr. Manning D. Webster, Mr. Cedric W. Clark* and
*Mr. Henry W. Cherrington,* for appellees.

COLLIER, J. This is an appeal on questions of law
from a judgment of the Probate Court of Meigs Coun-
ty in an action for a declaratory judgment to deter-
mine the rights and interests of the parties in the pro-
ceeds of a joint and survivorship account with a loan
and savings association.

The undisputed facts in the case are substantially as
follows: Some time prior to March 1935 John Spona-
gel, George Victor Sponagel and Lucinda Sponagel
Frecher opened account No. 24158 in The American
Loan & Savings Association of Dayton, Ohio, in the
approximate sum of $4,000. John Sponagel was the
father of George Victor Sponagel, referred to in the
record as Victor, and Lucinda Sponagel Frecher, re-
ferred to in the record as Lucinda.

In March 1935 John Sponagel, the father, died, leav-
ing the son and daughter, Victor and Lucinda, co-

owners of the account. On October 3, 1935, Victor shot Lucinda with a revolver, thereby wrongfully causing her death. Victor was arrested for the wrongful killing of his sister and placed in the county jail of Meigs county, where the shooting occurred. On October 7, 1935, Victor committed suicide in the county jail by hanging himself with a bed sheet.

After the death of Victor, the administrator of his estate received the balance of the account, $4,132.61, from the state of Ohio in the liquidation of The American Loan & Savings Association.

After a hearing in the Probate Court of Meigs County on the petition of the administrator of Victor's estate to determine the proper disposition of the funds represented by such joint and survivorship account, that court found in favor of the administrator of the estate of Victor, and from that judgment the cause is appealed to this court.

Appellants contend that under the doctrine that a man should not be permitted to profit by his own wrongdoing, a constructive trust should be imposed on the fund in favor of the estate of Lucinda and that to do otherwise is unconscionable, inequitable, unjust, and contrary to this equitable doctrine.

This question has been decided in a number of jurisdictions, including Ohio, with conflicting results. Some courts follow the equitable doctrine above stated and as contended by the appellants, while others take the position that a vested interest is created in the joint ownership of such an account which cannot be divested on the ground of public policy, in the absence of a statute to that effect; that property rights are too sacred to be subjected to the danger of public policy; and that courts of law have no right to attaint the wrongdoer. The Supreme Court of Ohio has followed the second line of cases on this question.

The only statute in Ohio relating to this question is Section 10503-17, General Code, which provides that no person finally adjudged guilty of murder in the first or second degree shall be entitled to inherit or take any part of the real or personal estate of the person killed. Since there was no criminal prosecution in this case this statute has no application.

In the case of *Oleff, Admr.*, v. *Hodapp, Gdn.*, 129 Ohio St., 432, 195 N. E., 838, 98 A. L. R., 764, our Supreme Court held in a case where the factual situation is parallel:

"4. The fact that one of the parties to such contract [a joint and survivor account] murders the other does not divest the murderer of his right thereto, in the absence of a statute to that effect.

"5. A public policy, however sound, cannot take away from the individual his vested rights."

These pronouncements of our Supreme Court are not obiter dicta, but constitute a statement of legal conclusions which were necessary to the decision of the case under consideration. In the *Oleff* case the account was held jointly by an uncle and nephew. The nephew conspired with another to murder the uncle and was convicted of the crime. We are unable to make any legal distinction between that case and the instant case.

We quote from 11 Ohio Jurisprudence, 785, Section 137:

"The decisions of courts of other jurisdictions, especially when the Supreme Court of Ohio has clearly spoken, are altogether beside the question."

In Section 138, *ibid.*, we find this statement:

"The doctrine of *stare decisis* requires an approval or acquiesence in the question which is the subject of investigation."

Adherence to this rule is necessary to preserve the

certainty, the stability and the symmetry of our jurisprudence.

It is held in *Thompson* v. *Moore,* 72 Ohio App., 539, 53 N. E. (2d), 666:

"The Courts of Appeals of Ohio are conclusively bound by the decisions of the Supreme Court of Ohio.

"It is immaterial whether the reasoning advanced in support of the decision is well or ill-founded."

This is true whether the decision is reached by a divided court or otherwise. *Durbin* v. *Humphrey Co.,* 38 Ohio Law Abs., 207, 49 N. E. (2d), 589. See, also, *Gottesman, Admr.,* v. *City of Cleveland,* 46 Ohio Law Abs., 474, 70 N. E. (2d), 149.

The decisions of other jurisdictions cited by appellants, especially the cases of *Vesey* v. *Vesey,* 54 N. W. (2d), 385, and *In Re Estate of Santourian,* 125 Misc., 668, 212 N. Y. Supp., 116, are very persuasive but when our Supreme Court has definitely established a precedent as has been done on the question presented by these facts, it would be presumptious for this court to refuse to approve or acquiesce in such decision. For this reason, the judgment of the Probate Court must be affirmed.

*Judgment affirmed.*

GILLEN, P. J., and McCURDY, J., concur.