[Civ. No. 7354.    Fourth Dist.    July 29, 1964.]

BETTY WHITFIELD, as Administratrix, etc., Plaintiff and Respondent, v. LEO FRANCIS FLAHERTY, Individually and as Executor, etc., Defendant and Appellant.

Young, Prenner & Hews and Robert H. Prenner for Defendant and Appellant.

Warren Schutz and Gomer Smith, Jr., for Plaintiff and Respondent.

COUGHLIN, Acting P. J.—This is an action to establish a constructive trust, for declaratory relief, and to quiet title.

██ In 1941 Francis Flaherty and Lucille Sudduth, hereinafter referred to as Frank and Lucille, respectively, commenced living together as husband and wife; previously had been married and were predeceased by their respective spouses; were not then married to each other because Lucille was receiving a pension arising out of the death of her deceased husband which would have terminated in the event of her remarriage; told Frank's son Leo, a teenager, that they had been married in Las Vegas; and on August 1, 1959, when both were over 80 years of age, actually married. Leo's mother died when he was 4 years of age; after that he lived with his father until the latter purportedly married Lucille; thereupon lived with his father and Lucille who, as he expressed it, "became" his mother; and entered the armed services in 1943. Subsequently, Frank and Lucille lived in separate dwellings until shortly before their actual marriage in 1959, but in the interim "they always were dating and going together almost constantly." The evidence indicates that they lived together very happily. However, on December 18, 1961, Frank intentionally killed Lucille by bludgeoning her to death with a hammer, and then committed suicide. He was suffering from cancer. She was in apparent good health although receiving treatment for high blood pressure and arthritis.

Lucille left surviving her as her sole heirs at law, her husband and her son by a previous marriage, Jack Grant. By her will, which had been executed on August 18, 1959, i.e., after her marriage to Frank, she bequeathed $3,000 to her son Jack; gave some trinkets to other legatees; left the rest of her property to her husband; and provided that "if he be dead or should die simultaneously with me, then I give all such rest, residue and remainder of my property to my husband's son, Leo Francis Flaherty." Pursuant to the provisions of the will Leo was named executor of her estate, which consists of a promissory note secured by a deed of trust upon which there is unpaid the sum of $9,521.83. This note had been acquired before marriage.

At the time of her death, Lucille and Frank were the owners, as joint tenants, of a parcel of real property appraised at $16,000, which Lucille had owned before marriage, but had conveyed to herself and Frank as joint tenants after marriage.

Frank left a will executed on May 15, 1958, by which he bequeathed and devised all of his property to Leo and named the latter executor. Pursuant thereto Leo was appointed as such. The property in Frank's estate, if any, consists of the joint tenancy realty and whatever he might acquire under his wife's will.

Jack Grant brought this action against Leo, in the latter's individual and representative capacities, to obtain all of the aforesaid property. Since the taking of this appeal, Jack Grant has died and the representative of his estate has been substituted as plaintiff.

The trial court found the facts as heretofore related; also that Frank "wrongfully, unlawfully and intentionally killed Lucille"; and that the consideration for the transfer from Lucille to herself and Frank as joint tenants "wholly failed by the wrongful, unlawful, intentional and premeditated killing." From these facts the court concluded: (1) that Frank became the constructive trustee of all of the subject property "for the benefit of the heirs of Lucille"; (2) that upon the death of Lucille and Frank "all of said property passed to Jack Grant . . . as the sole heir of Lucille . . . subject to the administration of her estate"; (3) that by his intentional and premeditated act of killing, Frank "destroyed all of his right of survivorship in the joint tenancy" property and "lost all of his right to succeed to any portion of said . . . property"; that by said killing, Frank "destroyed all of his rights to take under the Last Will and Testament of Lucille"; (5) that "it would be unconscionable for" Frank "to benefit himself or his estate by the . . . killing of said Lucille"; (6) that "Leo . . . is not an alternate beneficiary of the estate of said Lucille . . . and under the facts of this case, . . . the killing of Lucille" by Frank "destroyed the contingent rights of Leo"; (7) that Jack Grant "is the sole heir and sole beneficiary of all the rest, residue and remainder of the estate of Lucille . . . "; and (8) that he "should succeed to all" of the subject property. Judgment was entered declaring a constructive trust upon and quieting the plaintiff's title to all of the subject property. The defendant appeals.

Parenthetically, it must be noted at this juncture that the

foregoing conclusions involve inherent contradictions. The conclusion that Frank became a trustee of all of the property in question for the benefit of the heirs of Lucille is premised upon his acquisition thereof under her will or as her surviving joint tenant. On the other hand, the conclusion that by his wrongful act he destroyed his right to take under her will, destroyed his right to survivorship in the joint tenancy property, and lost his right to succeed to any portion thereof, dictates the further conclusion that he acquired no property which could be the subject of a constructive trust. It is obvious that the conclusions of law in question were drawn in an attempt to support the judgment under a variety of conflicting legal theories applied to facts similar to those in the case at bar, by courts in different jurisdictions, to effect a result compatible with adherence to the principle that a person may not profit by his own wrong and a syllogistical application of established rules of law.[1]

In California, where a person intentionally kills another, and because of the latter's death is the prospective recipient of a benefit which becomes the subject of a legal contest, the ensuing determination requires a consideration of three code sections, *viz.*, section 258 of the Probate Code and sections 2224 and 3517 of the Civil Code. ▮ Section 258 of the Probate Code, as it existed on the date of the killing involved in the instant case, provides that: ''No person convicted of the murder or voluntary manslaughter of the decedent shall be entitled to succeed to any portion of the estate; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter.'' The ''chapter'' referred to prescribes rules governing the succession to separate property not disposed of by will. In 1963 section 258 was amended to provide that: ''No person who has unlawfully and intentionally caused the death of a decedent ... shall be entitled to succeed to any portion of the estate *or to take under any will of the decedent;* but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter *or under the will of the decedent.*'' (Italics ours.)

Obviously, at the time of the subject killing, section 258 governed the right to take property under the laws of succession and not the right to take by testamentary disposition.

[1] See footnote 3, *post.*

(See Bogert on Trusts and Trustees (2d ed.) § 478, ch. 24, p. 79.) As a consequence, Frank was not barred from taking under Lucille's will.[2]

Sections 2224 and 3517 of the Civil Code provide, respectively, that: (1) "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it"; and (2) "No one can take advantage of his own wrong."

In situations other than those governed by a specific statute, such as section 258 of the Probate Code, the principles of law declared in the foregoing Civil Code sections have been applied to prevent a person who intentionally had killed another from profiting by his wrongful act. (*Beck* v. *West Coast Life Isn. Co.*, 38 Cal.2d 643, 644-645 [241 P.2d 544, 26 A.L.R.2d 979]—proceeds of insurance policy; *West Coast Life Ins. Co.* v. *Crawford,* 58 Cal.App.2d 771, 785-786 [138 P.2d 384]—*id.*; *Meyer* v. *Johnson,* 115 Cal.App. 646, 647 [2 P.2d 456]—*id.*; *Estate of Helwinkel,* 199 Cal.App.2d 283, 287-288 [18 Cal.Rptr. 473]—family allowance; *Abbey* v. *Lord,* 168 Cal.App.2d 499, 504-509 [336 P.2d 226]—property held in joint tenancy; *Ashwood* v. *Patterson* (Fla.) 49 So.2d 848, 849-850—tenancy by the entirety; *National City Bank of Evansville* v. *Bledsoe,* 237 Ind. 130 [144 N.E.2d 710, 713] —*id.*; *Price* v. *Hitaffer,* 164 Md. 505 [165 A. 470, 474]— inheritance under will or laws of succession; *In re Cox' Estate,* 141 Mont. 583 [380 P.2d 584, 586]—*id.*; *Whitney* v. *Lott* 134 N.J. Eq. 586 [36 A.2d 888, 889]; *Riggs* v. *Palmer,* 115 N.Y. 506 [22 N.E. 188, 12 Am.St.Rep. 819, 5 L.R.A. 340] —*id.*; *In re Sparks' Estate,* 172 Misc. 642 [15 N.Y.S.2d 926, 929]—*id.*; *In re Wilkins' Estate,* 192 Wis. 111 [211 N.W. 652, 655, 51 A.L.R. 1106]—*id.*)

█ Where, under the foregoing principles, the property taken by a wrongdoer is subject to a constructive trust, and he thereafter dies, the property as a part of his estate continues to be subject to such a trust. (*Van Alstyne* v. *Tuffy,* 103 Misc. 455 [169 N.Y.S. 173]; *Bierbrauer* v. *Moran,* 244 App.Div. 87 [279 N.Y.S. 176]; *Whitney* v. *Lott, supra,* 134 N.J.Eq. 586 [36 A.2d 888, 890].)

---

[2]Furthermore, it is doubtful that Probate Code section 258 as it existed in 1961 would apply where the killer committed suicide and thus prevented his conviction for murder or manslaughter. (*National City Bank of Evansville* v. *Bledsoe,* 237 Ind. 130 [144 N.E.2d 710, 713].)

We hold that Frank inherited the remainder of the estate of Lucille under her will; that he held the property thus inherited as a constructive trustee pursuant to section 2224 of the Civil Code; that this property became a part of his estate subject to that trust; and that, for the reasons hereinafter stated, Leo is the beneficiary of this trust.

Under the provisions of section 2224 of the Civil Code, as applied to the facts in this case, Frank became a constructive trustee of any property gained by his intentional killing of Lucille "for the benefit of the person who would otherwise have had it." Having determined that the property devised or bequeathed to Frank by Lucille, under her will, is subject to a constructive trust, because gained by his wrongful act in killing her, "the question arises as to who is the injured party or 'the person who would otherwise have had it,' " i.e., who would have had such property but for his wrongful act. (*Beck* v. *West Coast Life Ins., Co., supra,* 38 Cal.2d 643, 645.) If Frank's intentional killing of Lucille is removed from the chain of events under consideration, she would have survived him, as he committed suicide, and upon her death from natural causes Leo, under her will, "would ... have had" the whole of her estate less designated legacies. If Frank had not killed Lucille and had not committed suicide but both of them had died from natural causes and Lucille had outlived him, the same result would have followed. If the killing or suicide had not occurred and Frank had outlived Lucille, he would have taken the residue of her estate under her will and upon his death Leo "would ... have had" it under Frank's will. Considering either of the foregoing factual situations as alternate probabilities it must be concluded that Leo is "the person who would otherwise have had" the subject property upon the death of Lucille if Frank had not gained it by his wrongful act in killing her. The only prospective intervening occurrence that might alter these situations would be a revocation or change of the wills in question prior to the death of their respective makers. However, an assumption respecting such an occurrence, under the evidence at hand, involves speculation and conjecture dictating its disregard in determining who would have had the property in question except for the wrongful killing.

These conclusions leave for determination the issues with respect to the property held by Frank and Lucille as joint tenants.

The decisions determining the rights and obligations of a surviving joint tenant who has killed his cotenant are in marked conflict both in reasoning and result.[3] This state of the law was noted in *Abbey* v. *Lord, supra,* 168 Cal.App.2d 499, which was an action against a surviving joint tenant by the administrator of the estate of a deceased joint tenant who had been killed by the survivor, where this court declared (p. 506) : " ... to the extent to which the interest of the surviv-

---

[3] It has been held that: (1) The killing does not affect the right of the surviving tenant to take the entire interest in the joint tenancy property. (See *Bradley* v. *Fox,* 7 Ill.2d 106 [129 N.E.2d 699]; also see *Vesey* v. *Vesey,* 237 Minn. 295 [54 N.W.2d 385, 388, 32 A.L.R.2d 1090, 1106-1107].) (2) The killing destroys the survivorship characteristics of the tenancy and the estate in the property reverts to a tenancy in common. In some instances a constructive trust is imposed on a one-half interest in the property to effect this result. (*Abbey* v. *Lord,* 168 Cal.App.2d 499 [336 P.2d 226]; *Ashwood* v. *Patterson* (Fla.) 49 So.2d 848, 850; *Bradley* v. *Fox, supra,* 7 Ill.2d 106 [129 N.E.2d 699, 705]; *Cowan* v. *Pleasant* (Ky.) 263 S.W.2d 494, 495; *Barnett* v. *Couey,* 224 Mo.App. 913 [27 S.W.2d 757, 759].) (3) The killing does not result in a termination of the joint tenancy; the survivor and the heirs of the victim remain joint tenants. (*In re King's Estate,* 261 Wis. 266 [52 N.W.2d 885, 887].) (4) The killing deprived the wrongdoer of all interest in the property. (*Van Alstyne* v. *Tuffy,* 103 Misc. 455 [169 N.Y.S. 173]; see *Vesey* v. *Vesey, supra,* 237 Minn. 295 [54 N.W.2d 385, 388-391, 32 A.L.R.2d 1090].) (5) The killing does not interfere with the vesting of title in the survivor but: (a) The killer is chargeable as a constructive trustee of the whole of the property absolutely, or, in some instances, subject to a life estate in himself as a one-half interest therein, or the equivalent of such a life estate. (Scott on Trusts (2d ed.) § 493.2, p. 3203; *Colton* v. *Wade,* 32 Del.Ch. 122 [80 A.2d 923, 925]; *National City Bank of Evansville* v. *Bledsoe, supra,* 237 Ind. 130 [144 N.E.2d 710, 712-715]; *Anderson* v. *Grasberg,* 247 Minn. 538 [78 N.W.2d 450, 455]; *In re Cox' Estate,* 141 Mont. 583 [380 P.2d 584, 586]; *Neiman* v. *Hurff,* 11 N.J. 55 [93 A.2d 345]; *Neiman* v. *Hurff,* 14 N.J. Super. 479 [82 A.2d 471]; *Sherman* v. *Weber,* 113 N.J. Eq. 451 [167 A. 517]; *Bryant* v. *Bryant,* 193 N.C. 372 [137 S.E. 188, 191, 51 A.L.R. 1100]; *In re Perry's Estate,* 256 N.C. 65 [123 S.E.2d 99, 101].) (b) The killing raises a conclusive presumption that in the natural course of events the deceased joint tenant would have survived the killer and a constructive trust is imposed to effect this result. (*Colton* v. *Wade, supra,* 32 Del.Ch. 122 [80 A.2d 923, 925-926]; *Neiman* v. *Hurff, supra,* 11 N.J. 55 [93 A.2d 345, 348].) (c) The killing raises a doubt as to who should survive, which should be resolved against the killer and the whole property subjected to a constructive trust. (*Vesey* v. *Vesey, supra,* 237 Minn. 295 [54 N.W.2d 385, 387, 390, 32 A.L.R.2d 1090].) (d) A constructive trust is imposed on the property to the extent the interest of the killer is enlarged by his wrongful act. (Scott on Trusts (2d ed.) § 493.2, p. 3203; *Abbey* v. *Lord, supra,* 168 Cal.App.2d 499, 506; see *Cowan* v. *Pleasant, supra* (Ky.) 263 S.W.2d 494, 496.)

ing joint tenant is enlarged, the killer should be compelled to hold under a constructive trust, ... "; reviewed the propriety of the judgment of the trial court quieting the title of the plaintiff-administrator to 63 per cent of the property, under the theory that the wrongful act of the killer destroyed the survisorship provision of the joint tenancy and effected a tenancy in common between the former joint tenants; stated that (p. 508): "As readily the court could have found the joint tenancy was preserved and that the defendant was a constructive trustee, and that half or all of the property passed thereby to plaintiff"; but affirmed the judgment as rendered upon the ground that (p. 509): "The court, however, adopted a practical solution fairest to the plaintiff and to the defendant."

Although this court thus favored the constructive trust theory in a joint tenancy situation where one joint tenant intentionally kills his cotenant (*Abby* v. *Lord, supra,* 168 Cal.App.2d 499, 506, 508), no rule was adopted by which to determine whether the whole or what part of the property should be held by the survivor as a constructive trustee. The rule expressed in Restatement of the Law is that the surviving joint tenant holds the entire interest in the property under a constructive trust except that he is entitled to one-half the income therefrom for life. (Rest., Restitution, Quasi Contracts and Constructive Trusts, § 188, pp. 773-774.) Where the survivor, contemporaneous with his killing, commits suicide, any interest he might have had in the income is eliminated. Under such circumstances, the whole of the property should be impressed with a constructive trust. The beneficiary of that trust should be determined in accord with the rule prescribed by section 2224 of the Civil Code.

Alternatively applying the different legal theories[4] adopted by different courts in the premises to the case at hand, upon Lucille's death the whole or a part of the joint tenancy property either (1) became a part of Lucille's estate; (2) vested in Frank subject to a constructive trust; or (3) belonged to Frank without restriction. Under these circumstances, any part of the joint tenancy property which became a part of Lucille's estate would be subject to her will and go to Frank to be held by him as a constructive trustee for Leo; any part thereof which he obtained as the surviving joint tenant but held as a constructive trustee would be held for

[4]See footnote 3, *ante.*

Leo; and any part thereof which he retained unaffected by any constructive trust, under his will, would go to Leo.

Thus, whether the theory basic to the joint tenancy rule expressed in Restatement of the Law, or any other theory expressed in the decisions indicating a variant rule, is adopted as the law of this state is of no consequence in determining the issues at hand because, under any theory, Leo would be the recipient of the property.

The finding of the trial court that the consideration for the joint tenancy failed, even if supported by the evidence, is of no legal consequence. If this finding supports a rescission of the grant to Frank and Lucille as joint tenants, the property would revert to Lucille; would become a part of her estate; would go to Frank under her will; and would be held by him as a constructive trustee for Leo.

Lucille's will also provided that if any legatee thereunder "shall in any manner whatsoever contest this Will or any of the provisions hereof, I hereby bequeath to such person or persons the sum of One Dollar ($1.00) only, in lieu and in place of any bequest, devise or share in my estate under this Will or otherwise." The trial court found that Jack Grant, by instituting the instant action, was not foreclosed from receiving his bequest as a legatee under this will. Defendant contends that this was error. The institution of an action to declare the residuary devisee and legatee under a will a constructive trustee of the property devised and bequeathed to him, because he intentionally killed the testatrix, is not a proceeding within the letter or the spirit of a noncontest provision such as that contained in the subject will. The conclusion of the trial court accordingly was proper. The contention of the defendant to the contrary is without merit.

The judgment appealed from is reversed with instructions to the trial court to enter judgment in harmony with the views expressed in this decision.

Brown (Gerald), J., and McCabe, J. pro tem.,* concurred.

A petition for a rehearing was denied August 25, 1964, and respondent's petition for a hearing by the Supreme Court was denied October 15, 1964.

---

*Assigned by Chairman of Judicial Council.