Burke, J.
(dissenting). Since we feel that there is no reason to remand this case to the Surrogate’s Court for a further factual determination, we dissent and would affirm the order of the Appellate Division which awarded the proceeds of the joint bank account and the jointly owned United States savings bonds to the estate of Mrs. Bobula.
On August 28, 1964, John Bobula took it upon himself to shoot his wife to death and then take his own life in a similar manner. Mrs. Bobula’s death certificate reads “homicide”; Mr. Bobula’s reads “ suicide ”. While it is assumed that this was not a classic “murder for profit,” (see Riggs v. Palmer, 115 N. Y. 506 [1889]), nevertheless it falls within the long-established rule that ‘ ‘ no man shall be permitted to profit by his own wrong. This rule is applicable to the wrongdoer’s estate as well as to himself.” (Bierbrauer v. Moran, 244 App. Div. 87 [4th Dept., 1935]; emphasis added.)
Since he had previously determined that the Bobulas had died simultaneously (an order from which no appeal was taken), the *820 Surrogate in this estate proceeding concluded that the jointly owned assets should he distributed in accordance with the provisions of section 89 of the Decedent Estate Law (i.e., dividing the jointly owned property into two equal shares, one share to each estate). The Appellate Division held this to he error, and in its conclusion we concur.
The question, as we see it, is not whether John Bobula was criminally liable for his wife’s death, but rather whether he perpetrated a wrong upon her in taking her life whereby he changed and terminated her interest in their jointly owned property. (We are not at all concerned, on this appeal, with any property belonging to either of the decedents outright. The only assets before us are those in which each had a one-half undivided interest in the whole.)
- The facts in Bierbrauer (supra) are identical to those presented here. In that case, Presiding Justice Charles A. Sears spoke for a unanimous court: “ John and Nettie Moran held certain real estate as joint tenants. Their deaths, without proof of survivorship, would have resulted, were it not for the homicide, in a devolution of the property as though it had been held by them as tenants in common. (McGhee v. Henry, 144 Tenn. 548; 234 S. W. 509.) The willful hilling of the wife by the husband, however, stands in the way of his devisee receiving any part of the property on the basis of the fact that the wife did not survive her husband. Else his estate would profit by his crime. The property held by husband and wife as joint tenants must, therefore, be adjudged to have passed upon their deaths to the heir of the wife, the plaintiff Barbara Bierbrauer.” (244 App. Div., pps. 89-90; emphasis added.) A “willful killing” was the term used in Bierbrauer, and that same term is applicable here. Whether it he called ‘ ‘ murder ”, “ manslaughter ’ ’, or other felonious act, or simply homicide, John Bobula committed a wrongful act upon his wife causing her death, and neither he nor his estate should be allowed as a result to succeed to his inchoate interest in their jointly held assets. (See Estate of King, 261 Wis. 266 [1952].)
The majority’s disposition of this case presents further difficulties: it imposes upon a Surrogate the duty of determining whether John Bobula was criminally liable for his wife’s death. His spirit must he placed upon trial, and it must be determined whether he was guilty of murder beyond a reasonable doubt, or *821 whether he would have been exculpated from criminal liability, “ e.g., if he were insane.” First of all, the Surrogate’s Court is not a proper tribunal for such a proceeding. Secondly, it has not even been alleged that John Bobula might have been insane. And in this respect, if we were dealing in presumptions, we would note that the presumption of sanity, the normal condition of man, ‘ ‘ is not overcome by proof of the act of suicide ’ ’. (Richardson, Evidence [9th ed., 1964], § 61.)
In addition, the majority intimates no opinion as to the result to be reached regarding the husband’s property if it be determined that his act was in fact felonious. Such a disposition unnecessarily leaves undetermined an important aspect of this case, and poses the distinct possibility of a further appeal to this court, thereby prolonging and promoting unwarranted litigation. Further, it presumes that included in the assets in question is property belonging to John Bobula, ignoring the/ fact that the only property before us on appeal is jointly held property. As mentioned above, the property of John Bobula has already been distributed to his heirs without objection.
In sum, therefore, we feel that the order of the Appellate Division, awarding the jointly owned assets to the estate of Mrs. Bobula, should be affirmed, without the requirement of determining the criminal culpability of her acknowledged killer. Moreover, if John Bobula’s act is found to be felonious after his post mortem criminal trial in the Surrogate’s Court, then most assuredly the jointly owned assets must be awarded to Mrs. Bobula’s estate, and there is no logical reason to leave that question unanswered on this appeal.
Order reversed, etc.