[Civ. No. 26093. First Dist., Div. One. June 11, 1970.]

ANDREW C. JOHANSEN, as Administrator, etc.,
Plaintiff and Respondent, v.
COURTLAND L. PELTON, as Administrator, etc.,
Defendant and Appellant.

## Counsel

Fitzgerald & von der Mehden and Lloyd von der Mehden for Defendant and Appellant.

Lounibos & Lounibos and Leroy Lounibos for Plaintiff and Respondent.

## Opinion

**SIMS, J.**—Defendant, the administrator of the estate of a deceased husband who intentionally and feloniously killed his wife and immediately thereafter committed suicide, has appealed from a portion of a judgment entered in an action for declaratory relief brought by the administrator of the wife's estate for a declaration and adjudication of the respective rights and duties of the plaintiff and defendant in and to the property held by the decedents during their joint lives. The judgment declares that the defendant

holds title to all of the real property which stood of record in joint tenancy between the husband and wife as constructive trustee for the plaintiff.

The parties agree that the devolution of the property is controlled by the principle set forth in section 188 of the Restatement of the Law of Restitution as follows: "Where two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other." (See also Civ. Code, §§ 2224 and 3517; and Prob. Code, § 258.[1]) ■ The controversy involves the extent to which the interest of the wrongdoing husband's estate was enlarged by his felonious act. For reasons which are set forth below it is concluded that equity will be best applied by providing that the joint tenancy be deemed severed by the slaying, and that the estate of the victim be awarded equitably one-half of the property to which the husband succeeded as surviving joint tenant under the law. The portion of the judgment appealed from must therefore be reversed.

The uncontested findings show that prior to the decedent's marriage, December 26, 1959, the husband was the owner of an improved 67-acre parcel of real property in Sonoma County; that at the time of the marriage the unpaid balance on a note given for the balance of the purchase price was $6,429.11; that payments in the amount of $60 per month, including principal and interest, were regularly made on the note both before and after the marriage; that on January 29, 1963 by grant deed the husband conveyed the property to himself and his wife as joint tenants; that in June 1964, 23.96 acres of the property was sold for cash and the balance of the note $4,289.29 was paid in full; that the balance of the proceeds of the sale was disbursed to the husband and wife; and that in August 1964 another sale of a segment of the property realized $2,000, which was similarly distributed.

---

[1]Civil Code section 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Civil Code section 3517 provides: "No one can take advantage of his own wrong."

Probate Code section 258 provides: "No person who has unlawfully and intentionally caused the death of a decedent, and no person who has caused the death of a decedent in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, Penal Code, shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

The marriage terminated with the violent tragedy on March 4, 1966. The wife left as her heirs at law, excluding her disqualified husband (see Prob. Code, § 258, fn. 1 above), two daughters, the issue of prior marriages, and a third daughter, the issue of the marriage with her slayer (see Prob. Code, § 222). The husband's sole heir was his daughter (*id.*).

The trial court applied the rule suggested in the comment to the section of the Restatement of Restitution which has been cited above. It is there suggested that ". . . where there are two joint tenants and the principle of survivorship is applicable . . . . if one of them murders the other, the murderer takes by survivorship the whole legal interest in the property, but he can be compelled to hold the entire interest upon a constructive trust for the estate of his cotenant, except that he is entitled to one-half of the income for life."[2] Since the husband's life interest terminated with his suicide, the court, in applying that rule, properly determined that the defendant administrator held all of the surviving husband's title in constructive trust for the estate of slain co-tenant.

The foregoing application of the general principle against unjust enrichment has been recognized in this state. (See *Whitfield* v. *Flaherty* (1964) 228 Cal.App.2d 753, 761 [39 Cal.Rptr. 857].) In that case, however, the court also noted that there were diverse precedents as to the extent to which the surviving malefactor's title to the property should be subjected to a trust in favor of the estate of his victim (228 Cal.App.2d at

---

[2]*The pertinent comment is as follows:*

"*a.* The rule stated in this Section is based upon the principle that although the murderer will not be deprived of property to which he would otherwise be entitled, he will not be entitled to profit by the murder; and where it is doubtful whether or not he would have had an interest if he had not committed the murder, the chances are resolved against him. Thus, if the murderer had an interest in property contingent upon his surviving his victim, he is not entitled to keep the property, since although he survives the victim he does so as a result of the murder, and but for the murder he might have predeceased the victim, in which case he would not have been entitled to the property. It is immaterial that because of their respective ages, state of health or the like, it is probable that the murderer would have been the survivor.

"*b. Murder by co-owner.* If one tenant in common murders the other, no constructive trust will be imposed upon the murderer since his interest is not derived from or increased by the murder. The situation is different where there are two joint tenants and the principle of survivorship is applicable. In such a case if one of them murders the other, the murderer takes by survivorship the whole legal interest in the property, but he can be compelled to hold the entire interest upon a constructive trust for the estate of his co-tenant, except that he is entitled to one-half of the income for life. It is immaterial that each of them might have compelled a partition before the death of either. The same rule is applicable to husband and wife holding as tenants by the entireties, except that if the husband is entitled to the control and income of the property during his lifetime, and he murders his wife, he is entitled to continue to receive the whole of the income as long as he lives, but subject thereto he holds the entire interest upon a constructive trust for the estate of his wife excluding himself."

p. 760, fn. 3). On the facts before it,[3] it was unnecessary for the court to determine which rule should be applied. It concluded, "Thus, whether the theory basic to the joint tenancy rule expressed in Restatement of the Law, or any other threory expressed in the decisions indicating a variant rule, is adopted as the law of this state is of no consequence in determining the issues at hand because, under any theory, Leo would be the recipient of the property." (*Id.*, at p. 762.)

In *Abbey* v. *Lord* (1959) 168 Cal.App.2d 499 [336 P.2d 226], upon which the defendant relies, the trial court found that the surviving husband, who had feloniously killed his wife, had contributed 37 percent to the acquisition of the property which was held in joint tenancy, and that the slain wife had contributed the balance. The judgment of the trial court awarded the husband a 37 percent interest in the property, and quieted title to the remainder in the estate of the deceased wife. In an appeal by the surviving husband, the appellate court stated, "In the instant case the trial court concluded that the joint tenancy in the stock was destroyed and terminated by the act of killing the decedent. The court converted the joint tenancy into a tenancy in common. As readily the court could have found the joint tenancy was preserved and that the defendant was a constructive trustee, and that half or all of the property passed thereby to plaintiff. The court, however, adopted a practical solution fairest to the plaintiff and to the defendant. This court does not believe that it should countenance the addition of homicide as the approved method of terminating a joint tenancy without affecting the results found by the trial court." (168 Cal.App.2d at pp. 508-509.) In the absence of a cross-appeal by the estate of the deceased wife it was unnecessary to determine whether her estate should have been awarded a constructive trust in all of the property, subject only to a life interest in the husband, as suggested by the comment in the Restatement.

In *Whitfield* v. *Flaherty, supra,* the court explained *Abbey* v. *Lord,* as follows: "Although this court thus favored the constructive trust theory in a joint tenancy situation where one joint tenant intentionally kills his cotenant (*Abbey* v. *Lord, supra,* 168 Cal.App.2d 499, 506, 508), no rule was adopted by which to determine whether the whole or what part of

---

[3]The court observed, "Alternatively applying the different legal theories adopted by different courts in the premises to the case at hand, upon Lucille's death the whole or a part of the joint tenancy property either (1) became a part of Lucille's estate; (2) vested in Frank subject to a constructive trust; or (3) belonged to Frank without restriction. Under these circumstances, any part of the joint tenancy property which became a part of Lucille's estate would be subject to her will and go to Frank to be held by him as a constructive trustee for Leo; any part thereof which he obtained as the surviving joint tenant but held as a constructive trustee would be held for Leo; and any part thereof which he retained unaffected by any constructive trust, under his will, would go to Leo." (*Id.*, at pp. 761-762, fn. omitted.)

the property should be held by the survivor as a constructive trustee." (228 Cal.App.2d at p. 761.)

Under the theory applied by the trial court in *Abbey* v. *Lord, supra,* the defendant claims a 64 percent interest in the property because of the contributions made by the husband prior to and after his marriage.[4] On the record in this case it is unnecessary to pursue that theory. In *Abbey* v. *Lord* there had been an agreement, as a result of a prior separation, which fixed the respective contributions of each party. In this case, in the absence of evidence to the contrary, it must be concluded that the husband intended to and did give his wife an interest equal to his own as a joint tenant. (See Civ. Code, § 683; *Clark* v. *Carter* (1968) 265 Cal.App.2d 291, 294-295 [70 Cal.Rptr. 923]; and *Rupp* v. *Kahn* (1966) 246 Cal.App.2d 188, 195 [55 Cal.Rptr. 108].) It will be assumed that immediately prior to the tragedy each joint tenant was vested with equal title to the property, both legally and equitably.

■    In this case the appeal by the slayer's representative squarely presents the issue of whether the slayer has been unjustly enriched by one-half or by the whole (less a life interest in one-half) of the property to which he received the full legal title as surviving joint tenant. An examination of the precedents listed in *Whitfield* v. *Flaherty* (228 Cal.App.2d at p. 760, fn. 3), and others,[5] leads this court to the conclusion that the most equitable solution is to treat the joint tenancy as severed by the unlawful slaying, and to impress a constructive trust on one-half of the property held by the surviving slayer, or, as in this case, where he too is deceased, his estate, in favor of the heirs or devisees, other than the slayer, of the slain joint tenant.

In *Abbey* v. *Lord, supra,* the court observed, "The courts have invented ingenious theories to support a constructive trust. Some courts erect a

---

[4] The evidence showed that the purchase price was $9,000, that the husband paid $2,570.89 on the purchase price before the marriage. His estate claims that he should be credited with one-half of the balance paid after his marriage, giving him a total of $5,785.44 or 64 percent, and leaving $3,214.55 or 36 percent as attributable to the wife. (This computation may be erroneous because it disregards the relative interests of the parties at the time when a portion of the property was sold and the balance of the loan was paid out of the proceeds.)

[5] See *Hargrove* v. *Taylor* (1964) 236 Ore. 451 [389 P.2d 36] following the rule of the Restatement comment; *Budwit* v. *Herr* (1954) 339 Mich. 265 [63 N.W.2d 841]; and *Goldsmith* v. *Pearce* (1956) 345 Mich. 146 [75 N.W.2d 810] following the rule of equal division; 5 Bogert, Trusts (2d ed. 1960) § 478 (pp. 83-87) which suggests the use of expectancies predicated on mortality tables; McGovern, *Homicide and Succession to Property* (1969) 68 Mich.L.Rev. 65, 86; Note (1957) 41 Minn.L.Rev. 639, 644-645; Comment (1957) Md.L.Rev. 45; Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution* (1936) 49 Harv. L.Rev. 715, 728-731 and 732-735; and Annotation (1953) 32 A.L.R.2d 1099.

conclusive presumption that decedent would have outlived the killer. [Citation.] . . . That the killer is the trustee of the victim's one-half interest appears to be the rule most frequently adopted." (168 Cal.App.2d at pp. 507-508. See also *Cowan v. Pleasant* (Ky. 1953) 263 S.W.2d 494, 496.) The cases following the rule suggested in the Restatment, whether at law, or by the imposition of a constructive trust appear to rest on the proposition contained in the comment in the Restatment that "where it is doubtful whether or not [the murderer] would have had an interest if he had not committed the murder the chances are resolved against him." (See fn. 3 above.)[6] The application of this principle in the instant case has created assumptions, found in the trial court's opinion, which fly in the face of the true facts.

In the opinion filed in the trial court the judge noted that but for the murder the husband might have predeceased his wife, in which case he would not have been entitled to the property. To predict the respective life spans of the parties, and to assume that the property would retain its status as joint tenancy property during their joint lives is pure conjecture. (See Currie, J., and two associates dissenting, *In re King's Estate* (1952) 261 Wis. 266 [52 N.W.2d 885, 889-890].) It is contrary to actual fact in this case where the record shows that the wife was seeking a divorce and settlement of her property rights, and that the marital difficulties presumably gave rise to the tragedy. Similar conditions often attend murder-suicide incidents.

The theory expressed in the Restatement properly punishes one who takes the property and may be said to be a deterrent for a slaying motivated by cupidity. It has little purpose where the suicide demonstrates that the actor has no intent to enjoy the fruits of his crime. The trial court further observed that if the husband had not murdered his wife, and had simply taken his own life, the wife would have had the entire joint tenancy estate by reason of the survivorship provisions. That observation is a truism, but it has absolutely no relationship to the known facts under which the deaths occurred.

The truth of the matter is that from the minute the husband made up his mind to commit the double killing, it was his heirs, not himself, who

[6]See: *Bryant v. Bryant* (1927) 193 N.C. 372, 379 [137 S.E. 188, 191-192, 51 A.L.R. 1100]; *In re Perry's Estate* (1961) 256 N.C. 65, 69 [123 S.E.2d 99, 101-102]; *Colton v. Wade* (1951) 32 Del.Ch. 122, 126-127 [80 A.2d 923, 925-926]; *Welch v. Welch* (Del.Ch. 1969) 252 A.2d 131, 133; *In re King's Estate* (1952) 261 Wis. 266, 273-274 [52 N.W.2d 885, 889]; *Vesey v. Vesey* (1952) 237 Minn. 295, 305 [54 N.W.2d 385, 390-391, 32 A.L.R.2d 1090]; *Neiman v. Hurff* (1952) 11 N.J. 55, 62-63 [93 A.2d 345, 348]; *In re Cox Estate* (1963) 141 Mont. 583, 588-590 [380 P.2d 584, 587]; and *Hargrove v. Taylor* (1964) 236 Ore. 451, 456-457 [389 P.2d 36, 38, 39].

would be charged as trustees for the estate of the murdered wife. To deprive the heirs of the slayer of all interest in the property is to embrace a policy which tends to work a forfeiture, attainder, or corruption of the blood, with respect to the property interest which the surviving malefactor had at the instant before the slaying, and which, except for intervention on the theory adopted by the trial court, would have passed to his heirs. (See Pen. Code, § 2604; *Estate of Helwinkel* (1962) 199 Cal.App.2d 283, 288 [18 Cal.Rptr. 473]; and *Cowan* v. *Pleasant* (Ky.) *supra,* 263 S.W.2d 494, 495-496.)

The situation of the murder-suicide is most closely analogous to the situation of a simultaneous death. Under such circumstances the Legislature has adopted a policy which distributes joint tenancy property between the estates of the two joint tenants. (See Prob. Code, § 296.2;[7] and *Barnett* v. *Couey* (1930) 224 Mo.App. 913, 922-923 [27 S.W.2d 757, 762]; but cf. *In re Estate of Bobula* (1966) 25 App.Div.2d 241 [269 N.Y.S.2d 599], remanded on other grounds (1967) 19 N.Y.2d 818 [280 N.Y.S.2d 152, 227 N.E.2d 49].)

The rule which limits the constructive trust for the victim to one-half of the whole interest passing to the slayer rests on the theory that the slaying terminates the joint tenancy, or tenancy by the entirety as to both parties.[8] It is perhaps most clearly stated in the dissent in a case which followed the Restatement rule, "In the instant case, except as to the homestead, the husband any time during the lifetime of himself and his wife could have obtained a severance of the joint tenancy by alienation. As to all the joint property, including the homestead, he could have obtained such severance by partition suit. Likewise such severance could have been accomplished by the aid of a judgment making a property division in a divorce action.

---

[7]Probate Code section 296.2 provides: "Where there is no sufficient evidence that two joint tenants have died otherwise than simultaneously the property so held shall be administered upon, distributed, or otherwise dealt with, one-half as if one had survived and one-half as if the other had survived. If there are more than two joint tenants and all of them have so died the property thus administered upon, distributed, or otherwise dealt with, shall be in the proportion that one bears to the whole number of joint tenants."

[8]In *Abbey* v. *Lord, supra,* the court observed, "It is difficult to conjure any real distinction here between a tenancy by the entireties, and a joint tenancy, or the rationale of the cases that deal with one common-law form or the other." (168 Cal. App.2d at p. 506.) Such distinction as there is appears to render the equal division rule more applicable to joint tenants than to tenants by the entirety because the latter have no right to sever or partition except when the marriage is terminated by divorce or death. (See *National City Bank of Evansville* v. *Bledsoe* (1957) 237 Ind. 130, 139-140 [144 N.E.2d 710, 714]; and Wade, *Acquisition of Property by Willfully Killing Another—A Statutory Solution* (1936) 49 Harv.L.Rev. 715, cf. pp. 728-732 with pp. 732-735.)

"The theory underlying those decisions which justify the result of the heirs of the murdered joint tenant taking all (not merely one-half) of the joint property is that, by reason of the murder, the murdered joint tenant is thereby prevented from ever securing title to the whole by survivorship. However, it is entirely a matter of speculation as to which joint tenant would have outlived the other, in the event the murder had not been committed, or that a severance would not have taken place during the lifetime of both joint tenants as a result of alienation by either, partition, or divorce. Therefore, it seems that the result reached in the majority opinion comes very close to working a corruption of blood, or a forfeiture of estate, as to one who has been guilty of crime, which is prohibited by sec. 12, art. I of the Wisconsin constitution." (Currie, J., and two associates dissenting, *In re King's Estate, supra,* 261 Wis. 266, at pp. 275-276 [52 N.W.2d 885 at p. 889]. See also *Bradley* v. *Fox* (1955) 7 Ill.2d 106, 117-118 [129 N.E.2d 699, 705-706], and cases cited below.[9])

This rule has the merit of overcoming in some part the unreality produced by the application of the theory propounded in the Restatement, and, as has been noted, is particularly more logical when there is a murder-suicide. It is also consistent with the devolution of community property. If a husband and wife hold property as community property and one spouse slays the other, it could not be held, without effecting a forfeiture of his interest, that the survivor's estate was enhanced by the one-half which was vested in him before the tragedy. (See Civ. Code, § 5105 (former § 161a).)
■ It is a matter of common knowledge, and the books are full of cases which evidence that in this state community property is commonly placed in joint tenancy to avoid the expense of probate or for other motives. A rule which fails to recognize the slayer's interest in the latter situation creates diverse results dependent upon the form in which the property is held. This diversity is unwarranted because there is in reality no greater unjust enrichment in one case than in the other.

■ The remedy of restitution is an equitable one and should be as consistent with reality as possible. "It has always been the pride of courts of equity that they will so mould and adjust their decrees as to award substantial justice according to the requirements of the varying complica-

[9]See: *Barnett* v. *Couey* (1930) 224 Mo.App. 913, 922-923 [27 S.W.2d 757, 762]; *Grose* v. *Holland* (1948) 357 Mo. 874, 879-880 [211 S.W.2d 464, 466-467]; *Ashwood* v. *Patterson* (Fla. 1951) 49 So.2d 848, 850; *Hogan* v. *Martin* (Fla. 1951) 52 So.2d 806, 809; *Cowan* v. *Pleasant* (Ky. 1953) 263 S.W.2d 494, 496; *Budwit* v. *Herr* (1954) 339 Mich. 265, 280-281 [63 N.W.2d 841, 848]; *Goldsmith* v. *Pearce* (1956) 345 Mich. 146, 150-152 [75 N.W.2d 810, 813]; *National City Bank of Evansville* v. *Bledsoe* (1957) 237 Ind. 130, 139-140 [144 N.E.2d 710, 714-715]; and note also *Hargrove* v. *Taylor* (1964) 236 Ore. 451, 456-457 [389 P.2d 36, 39].

tions that may be presented to them for adjudication." (*Humbold Sav. Bank* v. *McCleverty* (1911) 161 Cal. 285, 292 [119 P. 82].)

The prevailing opinion of *In re King's Estate, supra,* states, "We decline to add murder of a cotenant to the approved methods by which one joint tenant may convert the joint tenancy of the other into some different interest, thereby, himself, acquiring an estate which he did not have before his crime." (261 Wis. at p. 273 [52 N.W.2d at p. 889]. Cf. *Abbey* v. *Lord, supra,* 168 Cal.App.2d at p. 509 where similar language appears to be directed to the necessity of imposing a constructive trust or other relief, and not to the disapproval of considering the joint tenancy as terminated by the slaying.)

The question of the extent to which the surviving slayer, or his estate when he commits suicide, is enriched is confused by the nature of the interests of the joint tenants. Although separate individuals are concerned it is said "there is thereby created but one estate, and . . . each of the four elements, unity of interest, unity of title, unity of time and unity of possession, must be present and an absence of any one would change the nature of the estate." (*Siberell* v. *Siberell* (1932) 214 Cal. 767, 771 [7 P.2d 1003].) It is, therefore, inherently impossible to measure separately the quantum of the respective joint tenants while the joint tenancy persists. When it terminates by death, the following rule governs, "Joint tenancy property belongs to the survivor by virtue of the original joint tenancy title and not through inheritance or any other type of succession after death." (*Goldberg* v. *Goldberg* (1963) 217 Cal.App.2d 623, 628 [32 Cal.Rptr. 93].) Application of the latter principle to the situation where one joint tenant, or tenant by the entirety, has slain the other, has led to two opposite results. In several jurisdictions the courts have failed to apply equitable principles, and have permitted the malefactor-survivor to retain all the property because his title relates back to the original grant.[10] In New York, however, the court looked to the legal title of the victim as relating back to the exclusion of any interest of the slayer.[11] Recognition

---

[10]See: *Beddingfield* v. *Estill & Newman* (1906) 118 Tenn. 39, 44-50 [100 S.W. 108, 109-111]; *Oleff* v. *Hodapp* (1935) 129 Ohio St. 432, 438 [195 N.E. 838, 841, 98 A.L.R. 764]; *Shuman* v. *Schick* (1953) 95 Ohio App. 413 [120 N.E.2d 330]; *Smith* v. *Greenburg* (1950) 121 Colo. 417 [218 P.2d 514, 518-520]; *In re Foster's Estate* (1958) 182 Kan. 315 [320 P.2d 855]. Note also, *Budwit* v. *Herr* (1954) 339 Mich. 265, 280-281 [63 N.W.2d 841, 848]; *Hargrove* v. *Taylor, supra,* 236 Ore. at pp. 453-454 [389 P.2d at p. 37] overruling *Wenker* v. *Landon* (1939) 161 Ore. 265 [88 P.2d 971]; and *Bradley* v. *Fox* (1955) 7 Ill.2d 106 [129 N.E.2d 699] overruling *Welch* v. *James* (1950) 408 Ill. 18 [95 N.E.2d 872].

[11]See: *Van Alstyne* v. *Tuffy* (1918) 103 Misc. 455 [169 N.Y.S. 173]; *In re Santourian's Estate* (1925) 125 Misc. 668 [212 N.Y.S. 116]; *Bierbrauer* v. *Moran* (1935) 244 App.Div. 87 [279 N.Y.S. 176]; and *In re State of Bobula* (1966) 25 App.Div.2d 241 [269 N.Y.S.2d 599], remanded on other grounds (1967) 19 N.Y.2d 818 [280 N.Y.S.2d 152, 227 N.E.2d 49].

has been given, however, to the slayer's right to enjoy one-half the fruits of property, which had been held as tenants by the entirety, for the term of his natural life.[12]

The foregoing indicates that the result to be obtained may vary depending on whether the problem is approached from the viewpoint of what the slayer had, or what the victim lost. The now generally repudiated rule that the survivor take all disregards the general principles of unjust enrichment first set forth in this opinion, and fails to consider at all what the malefactor gained. The New York rule and that recommended in the comment in the Restatement appears to unduly weigh what the victim lost. It does so to the derrogation of what the slayer had before, equitably if not legally. The seeming anomaly that the part gained and the part lost cannot be reconciled is due to the fact that the inchoate rights—with survivorship—of the two joint tenants are in reality greater than the whole while the tenancy exists. Any solution must, therefore, at best be a compromise. For the reasons set forth above it is concluded that a solution which recognizes the slayer's preslaying inchoate right to one-half the property is most equitable.

The portion of the judgment appealed from is reversed, and the case is remanded for further proceedings in accordance with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 5, 1970.

---

[12]*In re Hawkins' Estate* (Sur. Ct. 1961) 213 N.Y.S.2d 188.