BAILEY, ADMR., APPELLEE, *v.* BROWN, APPELLANT.

(No. 72-594—Decided April 25, 1973.)

64

*Messrs. Halliday & Sheets, Mr. Warren F. Sheets, Messrs. Webster & Fultz* and *Mr. Bernard V. Fultz,* for appellee.

*Messrs. Walker, Mollica & Gall* and *Mr. Homer B. Gall, Jr.,* for appellant.

WILLIAM B. BROWN, J. Since the parties agree that plaintiff's decedent was a guest in defendant's car, the

liability that must be shown for plaintiff to prevail is regulated by R. C. 4515.02, commonly known as the "guest statute," which states:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

The sole issue presented in this appeal is whether, under the evidence, reasonable minds could differ upon whether the conduct of defendant could be characterized as wilful or wanton misconduct. The issue arises by reason of defendant's motion for a directed verdict. Upon such a motion, the trial court is required to construe the evidence most strongly in favor of the party against whom it is made, and if it finds upon any determinative issue that reasonable minds could come to only one conclusion upon the evidence, and that conclusion is adverse to the nonmoving party, the motion must be sustained.

There is no question of fact in dispute. The only dispute is whether the conduct of defendant, considering all the circumstances, can be characterized as wilful or wanton misconduct.

Wilful misconduct is defined in paragraph three of the syllabus in *Tighe* v. *Diamond* (1948), 149 Ohio St. 520:

" 'Wilful misconduct,' as used in the Ohio guest statute, Section 6308-6, General Code, * * * implies an intention or purpose to do wrong, an intentional deviation from clear duty or from a definite rule of conduct, and not a mere error of judgment."

It is essential to fathom the mind of the defendant to determine whether he had the requisite intent for his behavior to be considered *wilful* misconduct. As the court in *Tighe*, at page 527, explained intent:

" * * * The word, 'wilful,' used in the phrase, 'wilful misconduct,' implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act, such as operating an automobile, was intentionally done."

Applying that explanation, for there to be wilful misconduct it must be shown that defendant's intention was to "perform some misconduct," not merely that his intention was to turn the car. In this case, there was no testimony that defendant's intention was to perform some misconduct; the testimony supported only defendant's intention to turn the car. Nor was there an intentional deviation from a clear duty. The conduct of defendant here is quite different from that in *Tighe*, where the defendant was held guilty of wilful misconduct:

" * * * Earl Diamond deliberately and intentionally planned to rush over the hump in the road at a rate of 60 miles an hour and throw the car up in the air so that its leap and landing would give his passengers a thrill." *Tighe*, at page 530.

In *Tighe* the court held that such a scheme of conduct was clearly wrong and that defendant should have recognized it as a violation of a duty toward his passengers. Here, defendant's conduct does not show a violation of such a duty as there was in *Tighe*. There was no evidence of an intention on the part of defendant to do any wrong; rather, it was an error of judgment, albeit serious.

"Wanton misconduct" is defined in paragraph two of the syllabus in *Universal Concrete Pipe Co.* v. *Bassett* (1936), 130 Ohio St. 567, as follows:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury."

The record indicates that defendant, immediately pre-

ceding the collision, was driving at a rate near the speed limit; that one quarter of a mile from the intersection he noticed car headlights approaching from the opposite direction; that he slowed down and put on his left-turn directional signal; and that as he commenced the turn he was unaware of the oncoming car. There is nothing in those facts to indicate a disposition to perversity. There is no perversity in failing to come to a complete stop before turning left, or in failing to check the oncoming lane of traffic, although such conduct may indicate negligent behavior.

Nor is there anything in the record to indicate that defendant knew his act would in all probability result in injury. It is very probable that, if one turns his car into the path of a car approaching from the opposite direction, he will injure himself and the others in the car. Defendant, however, testified that he did not remember seeing the approaching car.

The plaintiff argues that, even if there was no actual wilful or wanton misconduct, there was a constructive intention to do a wilful, intentional act, which is imputed by law. The court explained this in *Tighe* at page 528:

" 'There is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes by reason of a reckless disregard of probable consequences, a wilful wrong.' "

An essential prerequisite to the imposition of a constructive intention is a reckless disregard of the probable consequences. Here, there was no reckless disregard of the probable consequences. The consequences that defendant was aware of were those resulting from making a left turn without stopping. However dangerous such a left turn might be, it does not have the *probability* necessary to impute a constructive intention.

Plaintiff argues further that the jury might have drawn inferences from the facts presented in evidence

which would support a conclusion of wilful or wanton misconduct. Inferences must be drawn from the evidence; inferences upon inferences are not allowed. *Hurt* v. *Rogers Transp. Co.* (1955), 164 Ohio St. 329. The only conceivable inference helpful to plaintiff's case is that defendant made the left turn into the path of the oncoming car, conscious of and indifferent to the probable results of his course of conduct, *i. e.,* injury or death to the occupants of his car. There is no evidence in the record that defendant was perverse in his conduct.

The evidence in the record is not such that reasonable minds could differ as to the conduct of defendant. Some may characterize his behavior as negligent; but there is no evidence to characterize his conduct as wilful or wanton misconduct as this court has defined that term. Since plaintiff did not introduce evidence to show that defendant's conduct constituted wilful or wanton misconduct, it follows that the trial court erred in overruling defendant's motion for a directed verdict. The judgment of the Court of Appeals is reversed, and final judgment is rendered for the defendant.

*Judgment reversed.*

O'NEILL, C. J. HERBERT, POTTER, STERN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissents.

POTTER, J., of the Sixth Appellate District, sitting for CORRIGAN, J.