BOYDSTON et al., Appellants,

v.

NORFOLK SOUTHERN CORPORATION et al., Appellees. ■

[Cite as *Boydston v. Norfolk S. Corp.* (1991), 73 Ohio App.3d 727.]

Court of Appeals of Ohio,
Ross County.

No. 1683.

Decided July 19, 1991.

*Fusco & Ison* and *David A. Ison,* for appellants.

*Bannon, Howard & Dever* and *Robert E. Dever,* for appellees.

---

STEPHENSON, Presiding Judge.

This is an appeal from two judgments entered by the Ross County Court of Common Pleas. One judgment granted summary judgment in favor of the Norfolk Southern Corporation, defendant below and appellee herein, and the

other granted summary judgment in favor of the Norfolk and Western Railway Company, defendant below and appellee herein. Mark Boydston and Vicki Sewards, administratrix of the estate of Curtis Maughmer, plaintiffs below and appellants herein, appeal and assign the following errors:

"Assignment of Error Number 1:

"The trial court erred when it concluded as a matter of law that plaintiffs-appellants were trespassers on defendants-appellees' property.

"Assignment of Error Number 2:

"The trial court erred when in concluded that defendants-appellees owed to plaintiffs-appellants only the duty not to engage in willful or wanton misconduct.

"Assignment of Error Number 3:

"The trial court abused its discretion when it granted the motions of defendants-appellees for summary judgment for the reason that genuine issues of material fact exist."

The following facts are pertinent to this appeal. On October 29, 1985, appellant Mark Boydston, Curtis Maughmer, appellant Vicki Seward's decedent, and Ernest Shoemaker decided to go fishing. To reach the spot to fish, the three men crossed a trestle bridge with two train tracks over Paint Creek in Ross County. The bridge was the property of appellees. When they finished fishing, it was dark, and the three men had no light. They again decided to cross the trestle bridge. There is some confusion as to exactly what occurred, but it is clear that two trains, one going in each direction, also crossed the bridge when the three men were on the bridge. All three men were struck by something and sustained serious injuries. Curtis Maughmer subsequently died as a result of his injuries.

Appellants commenced the present action when they filed a complaint in the Ross County Court of Common Pleas on August 25, 1989. In their complaint, appellants aver that appellees' employees acted negligently, recklessly or with wanton disregard for the safety of the three men. Appellants therefore asserted that appellees were liable for the injuries to Mark Boydston and for the death of Curtis Maughmer. Each appellant sought $8,000,000 in compensatory damages.

Appellees each answered denying liability. Both appellees subsequently filed motions for summary judgment wherein they asserted that the three men were trespassers when they crossed the trestle bridge, and, therefore, appellees only owed them the duty of refraining from acting with a willful and wanton disregard for the three men's safety. Appellees concluded that since there was no evidence that their employees had so acted, they were entitled to

summary judgment. On March 22, 1990, the court below entered judgment in favor of appellee Norfolk Southern Corporation, and on April 12, 1990, the court entered judgment in favor of appellee Norfolk and Western Railway Company.

In their first assignment of error, appellants assert that the trial court erred in its classification of the three men as trespassers. Appellants contend that there was a question of material fact as to whether the men were trespassers, mere licensees, or implied invitees.

■ We first address appellants' contention that there was sufficient evidence from which a jury could find that the three men were invitees. In support of this argument, appellants cite *Brady v. Consol. Rail Corp.* (1988), 35 Ohio St.3d 161, 519 N.E.2d 387. In *Brady,* a police officer was injured when he fell at a railroad crossing and hit his knee on a piece of loose rail. While the property upon which the officer was hurt was owned by the railroad, it was on a public right of way. R.C. 4955.20 specifically requires railroads to maintain the crossing. The Ohio Supreme Court held that there is an implied invitation to the public to use the crossing and that the public is entitled to assume that the crossing will be kept in good repair.[1]

■ In contrast to *Brady,* the injuries in the case at bar did not occur on a public right of way. Instead, they occurred on a trestle bridge. Although members of the public allegedly have used the bridge to cross Paint Creek, there is no implied invitation to the public to so use the bridge. We hold that *Brady, supra,* is inapposit to the facts herein and conclude that the three men were not implied invitees.

■ Because the three men were not invitees, they could only be trespassers or licensees. "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement of the Law 2d, Torts (1967), Section 330. See, also, Prosser & Keeton, The Law of Torts (5 Ed.1984) 412, Section 60. Consent to enter does not need to be actual consent. It can be implied from acquiescence to continued use of the property by the public. See *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 190, 26 OBR 160, 163–164, 497 N.E.2d 1118, 1121, fn. 1; *Hannan v. Ehrlich* (1921), 102 Ohio St. 176, 131 N.E. 504, paragraph one of the syllabus. See, also, *Harriman v. Pittsburgh, Cincinnati & St. Louis Ry. Co.* (1887), 45 Ohio St. 11, 12 N.E. 451, paragraph one of the syllabus.

---

1. The court further held that a police officer who enters the land in the performance of official duties and is injured is entitled to protection as a member of the general public. Thus, if a member of the public could recover for his injuries incurred at the crossing, so could the police officer.

■ Appellants contend that appellees herein so acquiesced to the use of the bridge. They produced summary judgment evidence which showed that there were dirt pathways leading to the bridge on both sides of Paint Creek.[2] Appellants further produced affidavits of several persons who stated that they had used the trestle bridge in the past to cross Paint Creek. Finally, appellants point out that no signs were posted stating that the bridge was private property and trespassing was prohibited.

■ We disagree that appellees' inaction with respect to trespassers was a manifestation of consent to the public to use the bridge as a walkway. At one time in Ohio it appears that a railroad would be deemed to have acquiesced to the use of its property by the habitual use of its tracks by the public. See, *e.g., Harriman, supra.* However, the more modern approach in cases involving railroads is that "the mere toleration of continued intrusion where objection or interference would be burdensome or likely to be futile * * * is not in itself and without more a manifestation of consent." Prosser & Keeton, The Law of Torts, *supra,* at 414, Section 60. The Restatement of the Law 2d, Torts, *supra,* at Comment *c,* sets forth the following reasons for this approach:

"A failure to take burdensome and expensive precautions against intrusion manifests only an unwillingness to go to the trouble and expense of preventing others from trespassing on the land, and indicates only toleration of the practically unavoidable, rather than consent to the entry as licensee. Even a failure to post a notice warning the public not to trespass cannot reasonably be construed as an expression of consent to the intrusion of persons who habitually and notoriously disregard such notices."

Although, there are no cases directly on point in Ohio, the Supreme Court appears to have implicitly adopted this approach on more than one occasion. In *Brooks v. Norfolk & W. Ry. Co.* (1976), 45 Ohio St.2d 34, 74 O.O.2d 53, 340 N.E.2d 392, the court was faced with a case wherein a ten-year-old boy was injured by a train. The railroad track bisected a park where children played. The court concluded that the boy was a trespasser as a matter of law. Clearly, there are going to be numerous trespasses on railroad property by

**2.** Much of the evidence presented for summary judgment was in the form of portions of depositions attached to appellants' memorandum contra summary judgment. The depositions were not properly before the court below since the depositions were never filed in that court. However, appellees never objected to the use of such material. In fact, appellees also attach portions of unfiled depositions to their summary judgment motion. Since there were no objections, the court below could consider the deposition testimony in making its decision. McCormac, Civil Rules Practice (1991 Supp.) 85, Section 6.33; *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 8 OBR 347, 456 N.E.2d 1262; *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253.

children playing in the park. However, that fact did not alter the court's conclusion that the injured boy was a trespasser.

More recently, in *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 31 OBR 449, 510 N.E.2d 386, a four-year-old child was injured by a train running on tracks which abutted the apartment complex where the child resided. The court in *McKinney,* as it did in *Brooks, supra,* concluded that the child was a trespasser. As in the case at bar, there were paths running from the apartment complex to the railroad tracks which would indicate wide use of the tracks by the public. The only action taken by the railroad was to tell children, if they were seen, to get away from the tracks. That is similar to the action taken by C. Steven Smith, a track patrolman employed by appellees. He stated in an affidavit that when he observed trespassers, he contacted the police. There was no evidence in *McKinney* that the railroad took any preventive measures to keep the public off its tracks. Again, there was no finding of acquiescence by the railroad.

We conclude that evidence that the public used the trestle bridge to cross Paint Creek is not sufficient evidence to prove that appellees acquiesced to the use of the bridge. Hence, the three men who were injured in the case at bar did not have an implied consent license to use the bridge. Further, since it is uncontroverted that no actual permission was ever given to anyone to use the bridge as a walkway, there was no actual consent. Accordingly, the three men were not licensees. Because they were neither invitees nor licensees, the three men were trespassers, *i.e.,* ones "who, without express or implied authorization, invitation or inducement, enter private premises purely for [their] own purposes or convenience." *McKinney, supra,* 31 Ohio St.3d at 246, 31 OBR at 450, 510 N.E.2d at 388. For the aforementioned reasons, appellants' first assignment of error is overruled.

In their second assignment of error, appellants allege that the court erred in holding that appellees only owed the three men a duty not to engage in willful or wanton misconduct. Most of appellants' argument revolves around the different duties owed to different categories of persons, *i.e.,* whether they were invitees, licensees, or trespassers. Since we concluded that the three men crossing the bridge were trespassers, that portion of appellants' argument need not be addressed. Appellants also argue, however, that the standard of care used by appellees should be one of " 'ordinary care in which all circumstances can be considered,' " citing *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 215, 23 O.O.3d 224, 227, 431 N.E.2d 652, 656.

We find *Matkovich* to be clearly distinguishable and that it has no application in the case at bar. The accident in *Matkovich* occurred at night when the

plaintiff on a motorcycle ran into a train at a public crossing. There were no warning signs to indicate that a train was on the crossing, and the plaintiff did not see the train in time to stop. The court was concerned about the safety to motorists, who have a legal right to transverse the tracks at railroad crossings. The court concluded that Penn Central had an affirmative duty to take precautions to warn motorists when a train is blocking a crossing.

█ In contrast, pedestrians have no right to use the bridge in the case at bar to cross Paint Creek. Hence, the appellees have no affirmative duty to warn pedestrians of trains approaching the bridge and, further, no duty to keep a lookout for pedestrians on the bridge. See Prosser & Keeton, The Law of Torts, *supra*, at 394, Section 58; *Cleveland, Akron & Columbus Ry. Co. v. Workman* (1902), 66 Ohio St. 509, 64 N.E. 582.

█ Basically, in their argument that an ordinary care standard should be employed regardless of the status of the individual, be it that of trespasser, invitee, or licensee, appellants are urging this court to adopt the approach used in *Rowland v. Christian* (Cal.1968), 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561. In *Rowland*, the California Supreme Court eliminated the distinction between trespassers, invitees, and licensees and held that there is in all cases a duty of ordinary care under the circumstances. Appellant's argument must fail because the Ohio Supreme Court has continued to distinguish between invitees, licensees, and trespassers. See *McKinney, supra; Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853; *Brooks supra.* See, also, *Preston v. Baltimore & Ohio RR. Co.* (1988), 49 Ohio App.3d 70, 550 N.E.2d 191. Because this court is bound by the decisions of the Supreme Court, see, *e.g., Shuman v. Schick* (1953), 95 Ohio App. 413, 416, 53 O.O. 441, 442, 120 N.E.2d 330, 332, we continue to recognize the distinction.

Given our conclusion that the three men were trespassers as a matter of law, the duty owed to them by appellees was to refrain from engaging in "wanton misconduct." See *Brooks, supra,* paragraph one of the syllabus. Since the court did not err in making that determination, appellants' second assignment of error is overruled.

█ In their final assignment of error, appellants contend that the court below erred in granting summary judgment in favor of appellees. Where a party moves for summary judgment, the court should only grant the motion if the following criteria set forth in Civ.R. 56(C) are met: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most favorably toward the party against whom the motion is made, that

conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

The dispositive issue in the case at bar is whether appellees' actions amounted to "wanton misconduct." The court in *Brooks, supra,* cited two cases which defined "wanton misconduct." In *Bailey v. Brown* (1973), 34 Ohio St.2d 62, 63 O.O.2d 92, 295 N.E.2d 672, the court defined "wanton misconduct" as follows:

" 'Wanton misconduct' is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id.* at paragraph two of the syllabus.

Likewise, the court in *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 55 O.O.2d 165, 269 N.E.2d 420, stated the following:

"To constitute wanton misconduct justifying recovery, the conduct of the tort-feasor must be more than negligent: it must be such conduct with knowledge of a dangerous situation liable to cause injury to others, as manifests a heedless disregard for or indifference to the rights of others or for the consequences, *i.e.,* such conduct as manifests a disposition to perversity." *Id.* at paragraph two of the syllabus.

■ To their motions and memoranda in support of summary judgment, appellees attached several affidavits and portions of several depositions. Through the materials attached, the following facts were presented. The three men had not obtained permission to use the bridge. It was dark, and the men had no light. Both trains were travelling approximately twenty miles per hour, well within the forty-five mile per hour limit. None of appellees' employees who were in the trains saw any of the three men on the tracks nor did they realize anyone had been hit by the train until the trains reached their respective destinations.[3] Although appellants presented summary judgment evidence, none of it contradicted these facts. Since appellees' trains were legally running and no one saw the three men on the bridge, and had no duty to watch for them, see *Cleveland, Akron & Columbus Ry. Co., supra,* as a

3. Appellants attempt to refute this fact on appeal by arguing that it is unreasonable to believe that no one saw the three men on the tracks. However, appellants presented no summary judgment evidence in the court below which refuted the affidavits of appellees' employees. Therefore, the court below was required to regard that fact as true. On summary judgment, a trial court may not weigh the evidence or judge the credibility of the witnesses.

matter of law appellees engaged in no "wanton misconduct." [4]   Accordingly, the court below properly granted summary judgment in favor of appellees. For the aforementioned reasons, appellants' third assignment of error is overruled and the judgment of the court below is affirmed.

*Judgment affirmed.*

HARSHA and KERNS, JJ., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

---

4.  See *Shoemaker v. Norfolk & W. Ry. Co.* (May 22, 1990), Ross App. No. 1580, unreported, 1990 WL 71914, which involved the same fact pattern.  Shoemaker, the plaintiff therein, was the third of the three men injured while crossing the bridge.  This court affirmed the lower court's judgment granting summary judgment in favor of the railroads by concluding that as a matter of law that appellees engaged in no "wanton misconduct" toward Shoemaker.