[Cite as *McCarthy v. Family Dollar Stores of Ohio, Inc.*, 2018-Ohio-598.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARY MCCARTHY, ET AL. | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2017CA00149 |
| FAMILY DOLLAR STORES OF OHIO, INC., ET AL. | |
| | O P I N I O N |
| Defendants-Appellees | |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2016CV02213

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      February 12, 2018

APPEARANCES:

For Plaintiffs-Appellants

BRIAN L. ZIMMERMAN
B. Zimmerman Law
229 Third St. N.W., Suite 200
Canton, Ohio 44702

For Defendants-Appellees

CHRISTOPHER E COTTER
SAMUEL N. DODOO
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308

*Hoffman, J.*

{¶1} Plaintiffs-appellants Mary McCarthy, et al. appeal the July 31, 2017 Judgment Entry entered by the Stark County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee Family Dollar Stores of Ohio, Inc. ("Family Dollar").

STATEMENT OF THE FACTS AND CASE

{¶2} During the afternoon of May 29, 2015, Appellant Mary McCarthy ("McCarthy") visited the Family Dollar Store in Alliance, Ohio. McCarthy frequented this particular store two or three times a month. McCarthy entered the store through a glass door marked with a red and white "IN" sticker. The entrance door stands adjacent to the exit door, which is marked with a red and white "OUT" sticker. Both doors on the outside of store have a vertical metal handlebar. Both doors on the inside of store have a vertical metal handlebar and a horizontal metal bar which extends across the center of the doors.

{¶3} After paying for her merchandise, McCarthy walked toward the exit. She observed a black floor mat which appeared to lead to a "clear and bright" open exit door. McCarthy followed the floor mat and looked up just as she walked into a clear glass window. McCarthy lost her balance and fell backwards, fracturing her left hip and striking her head on the floor. At the time of the incident, the window was free of any signs or stickers, and a display unit was not positioned in front of the window as is depicted in the pictures attached to McCarthy's deposition.

{¶4} Appellant Paul McCarthy, McCarthy's husband, and Earl Eckert went to Family Dollar later the same day to retrieve McCarthy's vehicle. They spoke with Marissa

DiFlour, the store manager, who admitted another customer had walked into the same window that same day, but prior to McCarthy's accident.

{¶5}    On October 7, 2016, Appellants filed a complaint against Family Dollar, alleging McCarthy suffered severe personal injuries as a result of the May 29, 2016 incident.

{¶6}    On June 12, 2017, Appellants filed a motion for summary judgment on the issue of liability. Family Dollar filed a motion for summary judgment on June 23, 3017. Appellants filed a memorandum contra on July 14, 2017.

{¶7}    Via Judgment Entry filed July 31, 2017, the trial court granted summary judgment in favor of Family Dollar, finding the window was an open and obvious danger.

{¶8}    It is from this judgment entry Appellants appeal, raising as their sole assignment of error:

I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT I FAVOR OF DEFENDANT FAMILY DOLLAR STORES OF OHIO, INC.

SUMMARY JUDGMENT STANDARD OF REVIEW

{¶9}    Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this

Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶10} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶11} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving

party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

**{¶12}** In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

**{¶13}** In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 1996–Ohio–137, 662 N.E.2d 287; *Shump v. First Continental–Robinwood Assocs.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability. *Shump, supra; Boydston v. Norfolk S. Corp.,* 73 Ohio App.3d 727, 733, 598 N.E.2d 171, 175 (4th Dist.1991).

**{¶14}** The parties do not dispute McCarthy was a business invitee on May 29, 2015, when she entered the Family Dollar Store in Alliance, Ohio, to make a purchase. An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Broka v. Cornell's IGA Foodliner Inc.,* 5th Dist. No. 12CA100, 2013–Ohio–2506, ¶ 20 citing *Gladon, supra* at 315, 662 N.E.2d 287.

**{¶15}** The business owner is not an insurer of the customer's safety, but the business owner does owe the business invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden dangers. However, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey,* 13 Ohio St.2d 45, 48, 233 N.E.2d 589 (1968). In other words, a premises owner owes no duty to persons entering the premises regarding dangers which are open and obvious. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, paragraph 5 of the syllabus (Citation omitted.) The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

**{¶16}** In its July 31, 2017 Judgment Entry, granting summary judgment in favor of Family Dollar, the trial court found the window was open and obvious; therefore, Family Dollar did not owe a duty to McCarthy. We disagree as we find reasonable minds could come to different conclusions as to whether the window was an open and obvious danger. Our reasons follow.

**{¶17}** During her deposition, McCarthy testified:

Q. Now, let's talk about what you recall about that window that day that's similar or different from what we see here in Exhibit 3. * * *

A. Okay. For one thing, to begin with, I notice that this mat, that floor mat was not there.

Q. You are referring to a black mat in front of the out door?

A. Black mat. Yes, that was facing toward the window. Because I was walking that mat, and it was – I thought I was heading toward the door, that the door was out, because I was following the direction of the mat was going in. And it – instead of going toward the door, it was going toward the window.

* * *

Q. Let me ask you this: After you check out, and you have your purse and you have your plates, and as you are walking towards the exit, did there come a time when you looked toward the exit?

A. I did look, and it just looked – everything was so clear and bright that I assumed I was headed to toward the door.

Q. Okay. As you walk into the window, where were you looking at that moment?

A. Actually, when I hit the window, the first thing I tried to think of was how to catch myself, because I knew I was going to fall backward. There was nothing around me that I could grab onto, and I just went down.

* * *

I mean, there weren't any – any signs or anything on that window whatsoever. Nothing. It was just – it was just very clear, and I assumed that

that – walking the way I walked on the mat toward the – what I thought was the door.

Q. Were you looking at the mat as you were walking toward the exit?

A. I saw – I saw the mat that I was walking on. I started following it. And then I looked up.

Q. Okay.  So you recall looking up right before you struck the window?

A. Well, actually, I guess it was too late when I looked up, because I hit it right away.

* * *

No.  But it – I thought they had the door open.  It looked like the door was open.  And that's why I thought, according to the way I was walking, I assumed I was going that direction.  But then when I followed the mat, it led me to the window.

Q. It sounds like what you are saying is you thought the window was an opening?

* * *

A. Yes, because it was so clear and so bright that you couldn't – it was like they had just put a new window and scrubbed it up and it didn't – you know, it just looked like an open area.

Deposition of Mary McCarthy at 16-17, 20-21, 23-24.

{¶18} In addition, Appellant Paul McCarthy testified he went to Family Dollar with Earl Eckert later the same day to retrieve McCarthy's vehicle. They spoke with Marissa DiFlour, the store manager, who admitted another customer had walked into the same window that same day, but prior to McCarthy's accident. In his deposition, Appellant Paul McCarthy recalled:

Q. You did come to the Family Dollar later – later that day, I think?

A. Yes.

Q. Yes. Okay. What was the reason for coming to the store later that day?

A. To pick up the car that Mary had left there.

Q. Did you go inside the store?

A. Yes.

Q. Did you speak with anyone?

A. I asked for the manager, and the girl raised her hand and said she was the manager.

* * *

Q. What did you say to her?

A. I just asked her if, you know, the – my wife had been in here and had an accident. And she remembered her being there. She told me that someone prior to Mary running into the window, also it had happened. After Mary had run into it, she put something on the window.

Q. Did you see something on the window?

A. When I came in, yeah.

* * *

Q. And the manager told you something about a prior incident?

A. Yes, someone had run into the window prior to Mary, and then after Mary ran into it and, obviously, had her problem, she said she put something up on the window.

Q. Did she tell you if that – for that prior incident, did she tell you anything more about it?

A. No.

Q. Did she say if it was that same day?

A. Yeah, right.

Q. She said it was earlier in the day?

A. I don't know if she said earlier in the day. It sounded like right before Mary. So it sounded like it was pretty recent.

Q. Do you know if it was the same day or not?

A. Yeah, she said it was the same day. That's why she put up a sign after Mary had fallen, yes.

Deposition of Paul McCarthy at 8-11.


{¶19} The trial court noted several facts which supported its decision the window was an open and obvious danger. First, the exit door, which was located next to the window, was labeled, "OUT", and was equipped with both vertical and horizontal handlebars which could be used to push open the door to exit the store. Next, the exit

door and the window were observable to a reasonable person. Further, the exit door was not blocked on the date of the incident. Lastly, McCarthy had used the exit door on several previous occasions as she was a frequent customer of this particular store. The trial court added McCarthy testified she recalled seeing the "IN" and "OUT" stickers on the doors when she entered the store, and admitted she did not pay attention to the stickers when she exited the store.

{¶20} While these facts standing alone support the trial court's finding the window was an open and obvious danger, we find Appellants presented reciprocal evidence which raises a genuine issue of material fact, and we find reasonable minds could come to differing conclusions as to whether the window was and open and obvious danger.

{¶21} As McCarthy exited the store after making her purchase, she traversed along a black mat which she believed led to the exit door. McCarthy testified it was a "bright and clear day" and thought she was walking towards an open area. The window lacked any signage distinguishing it from the entrance and exit doors. We find these facts coupled with a prior incident which occurred on the same day and involved a customer walking into the same window create a genuine issue of material fact as to whether the hazard was open and obvious.

{¶22} Appellants' sole assignment of error is sustained.

{¶23} The judgment of the Stark County Court of Common Pleas is reversed and

the matter remanded for further proceedings consistent with this Opinion and the law.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur