[Cite as *Morris v. Robert S. Donoho Credit Shelter Trust*, 2024-Ohio-5426.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CRAIG MORRIS, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ROBERT S. DONOHO CREDIT | : | Case No. CT2024-0031 |
| SHELTER TRUST., | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
Court of Common Pleas, Case No.
CC2020-0192

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 15, 2024

APPEARANCES:

For Plaintiff-Appellant

DANIEL N. ABRAHAM
Colley Shroyer & Abraham Co., LPA
536 South High Street
Columbus, Ohio 43215

For Defendant-Appellee

CHRISTINE M. DURANEY
250 W. Old Wilson Bridge Road, Ste. 263
Worthington, Ohio 43085

*Baldwin, J.*

**{¶1}** Appellant Craig Morris appeals the trial court's decision granting summary judgment to appellee, the Robert S. Donoho Credit Shelter Trust.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** Appellee the Robert S. Donoho Credit Shelter Trust is the owner of a cattle farm ("Farm"). Mr. Donoho asked Herman Keel to run the Farm, which he did for many years. Keel initially baled hay and was paid one-third of the proceeds from its sale. In addition, Keel received a portion of the proceeds from the sale of cattle, which he sold on behalf of the Farm at the end of each season. He performed additional work for the Farm as well, for which he billed the Donohos and was paid by check.

**{¶3}** Following Mr. Donoho's death, Mrs. Donoho increasingly relied upon Keel to run the day-to-day operations of the Farm. Mrs. Donoho testified during deposition that she assumed Keel would do whatever was necessary to run the farm, and that she relied upon him to make decisions about the operations of the farm. She testified that, for example, if Keel needed to purchase something for the Farm he would call and tell her what was needed, and she would approve the purchase. Keel would pay for the purchase, and he would send her a bill so he could be reimbursed.

**{¶4}** On the evening of July 23, 2018, Keel asked the appellant if he was available the next day to help at the Farm with loading cattle. Bryan Vineyard ("Vineyard") was a friend of Keel, and owned the trailer into which the cattle were to be loaded.

**{¶5}** Keel built a system to load the cattle utilizing wooden fencing and pipe gates to guide the cattle into the trailer. The wooden fence portion of the loading chute, which took several days to construct, was set up by Keel and two others. The loading chute

consisted of the wooden fence and two pipe gates that were used to guide the cattle into the trailer. The loading chute into which the cattle were being loaded was owned by the appellee. The supplies that were used to construct the loading chute were purchased by Keel, who was then reimbursed for the cost by Mrs. Donoho.

**{¶6}** Keel stood behind the door and waited for Vineyard and the appellant to "run" the cattle "in," after which he was going to shut the back door and then open the middle door and separate the cattle in the trailer to balance out the weight.

**{¶7}** The appellant and Vineyard walked down to where the cattle were located in order to herd them around a pond and into the trailer. The entire area was quite muddy due to rain the day and night before. The appellant and Vineyard herded the cattle counterclockwise around the pond, along the wooden fence and toward the loading chute to the stock trailer. The cattle did not, however, go into the trailer. The appellant, who had turned his back on the cattle to walk away, heard Vineyard yelling to him that "they're coming at you." When the appellant looked up, he saw the cattle "running towards him." He "took off running towards the trees" closest to him and, when he went over the embankment, slipped in the mud and landed on a tree stump with his leg "wrapped around it." The appellant testified during deposition that he was aware of the embankment. Vineyard ran to tell Keel that the appellant had broken his leg and called 9-1-1.

**{¶8}** Keel was responsible for maintaining the Farm for the appellee, and testified during deposition that when a tree fell on the property he would dig up the stump with a backhoe or bulldozer. Keel testified that he was not aware of the stump into which the appellant fell. Mrs. Donoho also testified during deposition that she had no knowledge the stump into which the appellant fell was present on the premises.

**{¶9}** On July 15, 2020, the appellant filed a complaint naming the Robert S. Donoho Credit Shelter Trust and John Does #1-10 as defendants, and setting forth claims of negligence and premises liability. On August 28, 2023, the appellant filed a motion for partial summary judgment in which he sought a judgment from the trial court finding liability on the part of the defendants and scheduling the matter for a damages hearing. The appellant attached to his motion the affidavit of expert witness Bob Kingsbery. Kingsbery averred that the appellee was negligent because "the lack of a gate in the crowding pen made it likely the bulls would be able to leave the pen to avoid being loaded into the trailer." In addition, Kingsbery averred that a wood rail loading chute, which did not allow cattle to turn around once they were loaded into it and made it much safer to load cattle, was built inside the pen after the appellant was injured, and opined that had the new chute been in place at the time of the incident the appellant would not have been injured.

**{¶10}** The appellee filed a memorandum opposing the appellant's motion for partial summary judgment on September 27, 2023; it did not file a cross-motion for summary judgment. The appellee argued that Keel was an independent contractor, not an employee of the appellee, and that the appellant worked for Keel. The appellee argued further that Keel devised the plan for loading the cattle, which the appellant did not question. In addition, the appellee argued that the appellant was aware of the slippery nature of the ground on which he was working, as he testified that Keel remained at the door of the trailer in order to shut the door after the cattle were loaded because he was almost 90 years old, and the appellant and Vineyard "didn't want Keel walking around in all of the mud because of how slick it was."

**{¶11}** The trial court granted summary judgment in favor of the appellee, despite the fact that it had not filed a cross-motion for summary judgment. The trial court held that the appellant's expert witness erroneously stated in his report that the wooden loading chute was constructed after the appellant's accident, when in fact the loading system utilizing the wooden fence and pipe gates was constructed prior to the accident and utilized on the day of the incident. This, according to the trial court, represented a material mistake in the expert's report. The trial court held that because the appellant's expert opined that if the new chute been in place at the time of the incident the appellant would not have been injured, the fact that the chute was in place at the time of the incident vitiated his opinion on liability. The trial court found that the hazards that led to the appellant's injuries were open and obvious, and entered summary judgment in favor of the appellee.

**{¶12}** The appellant filed a timely notice of appeal, and sets forth the following assignments of error:

**{¶13}** "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DONOHO TRUST WHEN THE DONOHO TRUST HAD NOT MOVED FOR SUMMARY JUDGMENT."

**{¶14}** "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THERE WERE MATERIAL ISSUES OF FACT TO BE DETERMINED."

**{¶15}** The appellant argues that the trial court erred in granting summary judgment to the appellee despite the fact that it did not file a motion, and that it erred in granting summary judgment because material issues of fact existed precluding judgment. We disagree.

**STANDARD OF REVIEW**

**{¶16}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). Accordingly, this Court reviews a trial court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶17}** Civ. R. 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

**{¶18}** As this Court stated in *Infield v. Westfield Ins. Co.*, 2023-Ohio-1199 (5th Dist.):

> It is well established that the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment

must be viewed in the light most favorable to the opposing party. *Williams*

*v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*Id.* at ¶ 21.

## ANALYSIS

### *Assignment of Error Number Two*

**{¶19}** We will first address the appellant's second assignment of error, whether

the appellee was entitled to summary judgment, reversing the order of the assignments

of error in order to avoid unnecessary duplication.

**{¶20}** The appellant has asserted that the appellee was negligent. Thus, the

appellant must show a duty on the part of appellee to protect the appellant from injury; a

breach of that duty; and, an injury proximately resulting from the breach. *Jeffers v. Olexo,*

43 Ohio St.3d 140, 142, (1989). A premises liability case sounds in negligence. This Court

addressed negligence in the context of premises liability in the case of *Carpenter v. Mt.*

*Vernon Gateway, Ltd.*, 2014-Ohio-465 (5th Dist.):

> In a premises liability case, the relationship between the owner or
>
> occupier of the premises and the injured party determines the duty owed.
>
> *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312,
>
> 315, 1996–Ohio–137, 662 N.E.2d 287; *Shump v. First Continental–*
>
> *Robinwood Assocs.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). Ohio
>
> adheres to the common-law classifications of invitee, licensee, and
>
> trespasser in cases of premises liability. *Shump, supra; Boydston v. Norfolk*
>
> *S. Corp.,* 73 Ohio App.3d 727, 733, 598 N.E.2d 171, 175 (4th Dist.1991).

There is no dispute between the parties that on October 2, 2010, Mrs. Carpenter was a business invitee. An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Broka v. Cornell's IGA Foodliner Inc.,* 5th Dist. No. 12CA100, 2013–Ohio–2506, ¶ 20 citing *Gladon, supra* at 315. The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *See Jackson v. Kings Island* 58 Ohio St.2d 357, 358, 390 N.E.2d 810 (1979). However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may happen. *Paschal, supra* at 204. Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *See Brinkman v. Ross,* 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993); *Sidle v. Humphrey* 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus.

*Id.* at ¶¶ 19-20. The activity in which the appellant was engaged benefitted the property owner, and he is therefore an invitee for purposes of our analysis.

**{¶21}** Under Ohio law, a landowner owes no duty to protect an invitee from dangers which are known to the invitee, or are so obvious and apparent to the invitee that

he may be reasonably expected to discover them and protect himself against them. The Ohio Supreme Court has held that a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. *Armstrong v. Best Buy Company, Inc.,* 2003-Ohio-2573, paragraph 5 of the syllabus, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph 1 of the syllabus. The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so owners may reasonably expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, (1992).

**{¶22}** When considering whether a condition is open and obvious, the court must consider the nature of the condition itself, not the plaintiff's conduct in encountering the condition. *Knight v. Hartville Hardware, Inc.*, 2016-Ohio-1074, ¶ 18 (5th Dist.), citing *Jacobsen v. Coon Restoration & Sealants*, *Inc.*, 2011-Ohio-3563, ¶ 18 (5th Dist.). The dangerous condition at issue does not actually have to be observed by the plaintiff to be an open and obvious condition under the law. *Kraft v. Johnny Biggs Mansfield*, LLC, 2012-Ohio-5502, ¶ 16 (5th Dist.). The determinative issue is whether the condition is observable. *Id.*

**{¶23}** The landowner's duty is not to be determined by questioning "whether the [condition] could have been made perfect or foolproof. The issue is whether the conditions which did exist were open and obvious to any person exercising reasonable care and watching where she was going." *Jackson v. Pike Cty. Bd. Of Commrs.*, 2010-Ohio-4875, ¶ 18 (4th Dist.).

{¶24}  In the case sub judice, the hazards of being around cattle is observable, as was the muddy condition of the paddock. These conditions existed and were open and obvious to any person exercising reasonable care and watching where he was going. The appellant turned his back on the cattle while in a muddy paddock. This conduct is not indicative of a person exercising reasonable care for his own personal safety. The trial court properly granted summary judgment to the appellee, and the appellant's second assignment of error is overruled.

### *Assignment of Error Number One*

{¶25}  In his first assignment of error the appellant argues that the trial court erred in granting summary judgment to the appellee when it did not file a motion for summary judgment. We disagree.

{¶26} The Ohio Supreme Court addressed this issue in *Ohio State Bar Association v. Watkins Global Network,* 2020-Ohio-169, stating "…although respondents failed to timely file a cross-motion for summary judgment, we further conclude that summary judgment should be granted in favor of respondents on the remaining claims." *Id.* at ¶22. In support of its finding, the Court cited to its earlier case of *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.,* 27 Ohio St.3d 25 (1986), in which the Court stated: " 'While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party,' summary judgment in favor of the nonmovant may be proper, and does not prejudice due-process rights, when 'all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law.'" *Id.* at 28.

**{¶27}** This case is, despite the red herrings, a premises liability case at its core. The evidence properly before the trial court establishes that Keel constructed a loading chute on the appellee's property utilizing the wooden fence and pipe gates; and, that the appellant's expert based his opinion on liability on the mistaken belief that the loading chute was not built until after the appellant's injury – opining that "had the new chute been in place, [the appellant] would not have been injured." Furthermore, the evidence establishes that the hazards at issue, the cattle and the muddy conditions in the paddock, were open and obvious. As such, the trial court properly found it appropriate to award summary judgment to the appellee, even as a non-moving party. The appellant's assignment of error number one is, therefore, overruled.

## CONCLUSION

**{¶28}** Based upon the foregoing, the appellant's assignments of error numbers one and two are without merit, and the decision of the Muskingum County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Delaney, P.J. concur.

Hoffman, J. dissents.

*Hoffman, J., dissenting*

{¶29} I respectfully dissent from the majority opinion. The trial court and the majority find Appellant's expert's opinion on liability contained a material mistake as to when the wood rail loading chute was installed. Appellant contends the fact Mrs. Donoho authenticated a check written to Mr. Keel, which she testified was for a new cattle chute, and said check was dated more than a year after the stampede, creates a genuine issue of disputed fact. (Donoho Dep. 64: 5-14, Ex. 31). When viewed most favorably for Appellant, as is required by Civ.R. 56, I find this evidence sufficient to create a genuine dispute as to when the wood rail loading chutes came into existence, and therefore, the expert opinion of Kingsberry was improperly rejected as evidence. Such disputed fact disqualifies use of the exception to the general rule prohibiting entering summary judgment in favor of a non-moving party.

{¶30} Accordingly, I would sustain Appellant's first assignment of error.

{¶31} Although arguably premature given my proposed disposition of Appellant's first assignment of error, I do wish to comment on the trial court's and majority's conclusion the open and obvious doctrine bars Appellant's claims in this case.

{¶32} The trial court found the hazards that resulted in Appellant's injuries were open and obvious. The majority finds likewise, stating being around cattle is an observable hazard, as was the muddy condition of the padlock, and noting Appellant turned his back on the cattle which was indicative of a lack of care on Appellant's part. I contend any issue regarding assumption of the risk or contributory negligence on Appellant's part were not the basis for the trial court's decision or issues briefed to this

Court, and consideration of those affirmative defenses ought best be left for the trier-of-fact.

**{¶33}** The fact herding cattle can be a dangerous activity does not directly bear on the issue of whether a hazard is open and obvious. The fact the padlock was muddy was, in fact, the precipitating cause of Appellant's injury. Appellant slipped while descending an embankment because he was running to avoid the stampeding cattle. Appellant claims the defective design of the padlock for the loading of the cattle was the alleged reason for the stampede. I submit the fact the padlock and embankment were muddy, and obviously slippery, is a red herring to the primary cause of Appellant's injury.

**{¶34}** I would reverse the trial court's grant of summary judgment in favor of Appellee.